**Barbara B. SACK et al., Plaintiffs-Appellants,**

v.

**V. T. LOW, et al., doing business as a partnership under the name of Bear, Stearns & Co., and Richard W. Silverman, Defendants-Appellees.**

**Docket 72–2327.**

United States Court of Appeals, Second Circuit.

Argued Feb. 13, 1973.

Decided April 13, 1973.

Gordon T. Walker, Boston, Mass. (Hale & Dorr, Boston, Mass., and Kurtz & Vassallo, New York City, of counsel), for plaintiffs-appellants.

Arnold S. Anderson, New York City (A. Edward Grashof, and Winthrop, Stimson, Putnam & Roberts, New York City, of counsel), for defendants-appellees.

Before FRIENDLY, Chief Judge, OAKES, Circuit Judge, and DAVIS,* Judge.

FRIENDLY, Chief Judge:

The plaintiffs, Barbara B. Sack, a resident of Massachusetts, and three other residents of that state, acting as trustees of a Massachusetts profit sharing trust, brought this action in the District Court for the Southern District of New York in March 1972 against the partners of Bear, Stearns & Co., a brokerage firm which has its principal place of business in New York City, and Richard W. Silverman, an employee having the title of Vice President, alleging that defendants had committed various violations of federal securities laws. Defendants immediately moved for summary judgment on the ground that a previous action between the same parties on the identical claim had been dismissed by the District Court for Massachusetts because of the running of the statute of limitations; defendants argued that this was a dismissal "on the merits" which barred relitigation here under the principle of *res judicata*. The late Judge McLean granted summary judgment, and plaintiffs appealed. For an understanding of the issues, we must set out the procedural history of this litigation in some detail.

In July 1969 the Bay State Smelting Co., a Massachusetts corporation, brought an action in the District Court for Massachusetts against the same defendants alleging essentially the same violations of the securities laws on the basis of the same course of conduct as is involved here. Bay State moved in December 1970 for leave to join the Sack plaintiffs, who were represented by the same counsel as Bay State, as additional plaintiffs in its action and to file a "consolidated, substitute bill of complaint." These motions were denied by Judge Murray in September 1971.

Shortly thereafter, on October 13, 1971, the Sack plaintiffs filed a separate complaint in the District Court for Massachusetts. After stating that "the acts and transactions complained of occurred in substantial part within the District of Massachusetts," the complaint alleged that in February 1969 defendants had purchased shares of Armour & Co. common stock for plaintiffs' accounts; that defendants had failed to sell these shares when payment had not been received within a week, as required by § 4(c) of Regulation T of the Board of Governors of the Federal Reserve System, 12 C.F.R. § 220.4(c), although Barbara Sack was six days and the Trust was four days late in making payment; that, also in violation of said Regulation, defendants purchased the Armour shares with the intent to exchange them for debentures and warrants of General Host Corporation, pursuant to a tender offer then outstanding, before payment was received from the plaintiffs, and in fact did so; that the General Host securities subsequently declined in value; and that some of the General Host securities were sold at a substantial loss and others are still being held with a market value lower than the amount paid. The complaint also alleged that Silverman had falsely represented in a telephone call from New York City to the plaintiffs in Massachusetts that the purchase was a riskless arbitrage transaction since the General Host securities, which were selling at a higher price than the Armour shares, would be sold promptly, and that defendants failed to reveal they

* Of the United States Court of Claims, sitting by designation.

were making a market in the Armour and General Host securities and were trading in them for their own account, in violation of sections 9, 10, and 15 of the Securities Exchange Act and Rules 10b–5 and 15c–1 through 7. The complaint further alleged that defendants' failure to sell the General Host securities promptly was a breach of their agreement with plaintiffs. Somewhat inconsistently with the allegations that the purchases were made on the basis of Silverman's misrepresentations and an agreement, the complaint also alleged that the purchases were made by Silverman in the exercise of a discretionary power which, in violation of Rule 408 of the New York Stock Exchange, was not in writing.

Defendants then moved for summary judgment dismissing the complaint on the ground that it sounded in tort and was barred by the two-year Massachusetts statute of limitations, Mass.Gen. Laws ch. 260, § 2A, which had run while the motion to intervene in the Bay State action had been pending, since the last transactions in plaintiffs' accounts took place prior to March 31, 1969 and the last of the General Host securities were sent to the plaintiffs not later than April 15, 1969. Not disputing the facts, the plaintiffs asserted that the six-year contract statute of limitations applied. On January 4, 1972, Judge Murray held that the tort statute of limitations applied, and granted summary judgment for the defendants.

On March 22, 1972, the plaintiffs filed the instant action in the Southern District of New York. The complaint was substantially identical with that filed in Massachusetts except for an allegation that "the acts and transactions complained of occurred in substantial part

within the Southern District of New York." On April 14, defendants moved for summary judgment, claiming that the Massachusetts judgment was a bar. Judge McLean granted the motion on September 28, on the authority of Bertha Building Corp. v. National Theatres Corp., 248 F.2d 833, 840 (2 Cir. 1957), cert. denied, 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811 (1958), which, relying on the provisions of F.R.Civ.P. 41(b), stated that dismissal of a complaint on the basis of the statute of limitations "operates as an adjudication upon the merits" unless the district judge specifies otherwise, and Murphy v. A/S Sobral, 187 F. Supp. 163 (S.D.N.Y.1960), which applied this reasoning to bar on grounds of *res judicata* an action brought here if a previous action in another forum had been dismissed on the basis of the statute of limitations.

Plaintiffs appealed to this court. At the same time, they also moved before Judge Murray in the District of Massachusetts for an amendment of his order of January 14, 1972. On January 9, 1973, Judge Murray entered the following order:

> Summary judgment for defendants ordered on January 14, 1972 is not an adjudication upon the merits and is without prejudice to plaintiffs' rights to bring another action in another jurisdiction based upon the transactions or occurrences which are the subject matters of their claims herein subject to the appropriate statute of limitations of such other jurisdiction.

Plaintiffs thereupon moved that we remand to the District Court to enable it to vacate its order of September 28, 1972, on the basis of the subsequent Massachusetts order.[1] Defendants

---

1. Defendants have not questioned the timeliness of plaintiffs' application for the amendatory order, but since the question is jurisdictional, we must consider it. The motion purported to be made under F.R. Civ.P. 60(b), of which the most pertinent subdivision seems to be (6), and, if properly so made, it was timely. On the other

hand, if the motion were in fact one under F.R.Civ.P. 59(e) "to alter or amend the judgment," which was what in fact was asked, the ten-day limit of that rule had long since expired. The Advisory Committee notes make it plain that a principal purpose of Rule 59(e), which was added in 1946, was to make clear that a

moved for summary affirmance, claiming that the amendment of the Massachusetts order was without legal effect in the Southern District of New York and that in any event the action was barred by the New York "borrowing statute," C.P.L.R. § 202, which reads as follows:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply. .

## I.

Prior to the *Bertha Building* decision, the law in this circuit, as set out by Judge A. N. Hand for our court's "first team" in Warner v. Buffalo Drydock Co., 67 F.2d 540 (2 Cir. 1933), cert. denied, 291 U.S. 678, 54 S.Ct. 529, 78 L. Ed. 1066 (1934), was that dismissal of a complaint in another forum on the ground that the statute of limitations had run was not an adjudication on the merits and did not bar a subsequent action on the same claim here. The court adopted the traditional reasoning that unless the statute of limitations was intended to extinguish the right (*i. e.*, if it were an integral part of the statute which created the right), a defense on the basis of the statute was a procedural question on which each forum state

would apply its own law and therefore dismissal on that ground represented only a determination that the particular remedy the plaintiff had sought to pursue was unavailable, leaving him free to seek to enforce the right in another forum if the limitations of that forum allowed. This is still the general rule. See 1B Moore, Federal Practice ¶ 0.409 [6], at 1035–36 (1965). The Restatement of Judgments § 49, comment (a) (1942), explains that dismissal on the ground of the statute of limitations operates as a bar to the extent that it will prevent a future action in the state where the judgment was rendered, but not so far as other states are concerned.

The issue in *Bertha Building* concerning the effect of a dismissal on the basis of the statute of limitations arose in a rather peculiar way. The precise question, as stated by the court, was whether, in a treble damage action brought in the Eastern District of New York under the antitrust laws for an injury suffered in California, it was "proper for the judge instead of a jury to decide whether the defendant could have been sued in the Southern District of California between July 20, 1935 and July 20, 1938," 248 F.2d 833, at 834. This was important because if the defendant could have been so sued, the California statute of limitations would not have been tolled and the action would be barred under the New York borrowing statute, then § 13 of the Civil Practice Act. In stressing the importance of holding that the action was thus barred in New York and

district court had power to amend a judgment dismissing without prejudice so that the dismissal should be with prejudice, as held in Boaz v. Mutual Life Ins. Co., 146 F.2d 321 (8 Cir. 1944), and *vice versa*, but at the same time place a short time limit on such motions since these tolled the time limits for the taking of appeals under then F.R.Civ.P. 73(a), now FRAP 4(a). However, the short time limit also implies that the respect in which alteration or amendment is needed should be readily apparent. Here, as will appear from the subsequent discussion, the law of judgments as generally applied would not have required that the judgment be

amended in order to permit an action to be maintained on the same claim in a state where the statute of limitations had not run. The importance of an amendment to the judgment became fully apparent only after Judge McLean's decision. We therefore hold that, under the unusual circumstances here presented, the motion was properly made under F.R.Civ.P. 60 (b)(6). *Cf.* Klapprott v. United States, 335 U.S. 601, 614–615, 69 S.Ct. 384, 93 L.Ed. 1099 (1949); Menier v. United States, 405 F.2d 245 (5 Cir. 1968), and authorities there cited; 7 Moore, Federal Practice ¶ 60.27 [1], at 341–43 (2d ed. 1972).

what was held to be the consequent need for a jury trial on the factual issue critical to the defense, the court went on to say, 248 F.2d at 835:

> A determination of this defense has a reach and a finality not inhering in any decision as to venue. For if the defense of the statutory bar is sustained, the resulting judgment of dismissal operates as a final adjudication of the merits of the controversy; a decision as to venue, however, of course leaves the plaintiff free thereafter to seek an adjudication on the merits of his claim. Fed.Rules Civ. Proc. rule 41(b), 28 U.S.C.A.

When the defendant petitioned for rehearing, the court said this, 248 F.2d at 840:

> We are unmoved by the petitioner's contention that we were wrong in asserting that a dismissal based upon a defense of the statute of limitations is an adjudication on the merits. Warner v. Buffalo Drydock Co., 2 Cir., 67 F.2d 540, which is cited in support of that contention, we think is distinguishable. And moreover, it has been superseded by the clear mandate of Rule 41(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. which in its last sentence directly contradicts the holding of the Warner case. Although under the rule in a proper situation the District Judge may specify that his order be without prejudice, Judge Galston did not so qualify his order of dismissal.

These remarks have been taken to establish the rule in this circuit that a dismissal on the ground of the statute of limitations would bar a second action on the same claim in a different forum. See Murphy v. A/S Sobral, *supra,* 187 F.Supp. 163; 1B Moore, *supra,* at 1035 & n.13.

■ We must own to some discomfort with these statements in *Bertha Building*; they seem to go either too far or not far enough. While the statements cannot properly be characterized as dicta, they may have gone beyond the necessities of the case. In addition to the possibility of holding that a plaintiff in an action which would formerly have been "at law" was entitled to a jury trial on an issue of fact relevant to the defense of the statute in the forum of his choice, it might very well have been true in *Bertha Building* that, with the long lapse of time between September, 1951, when the New York action was brought, and the district court's decision in 1956 dismissing the action as time-barred, it would have been too late to sue elsewhere, quite apart from the effect in another forum of a judgment of the district court sustaining the New York statute of limitations as a defense. The opinion on rehearing says that *Warner* is distinguishable but not why. The provision in F.R.Civ.P. 41(b) permitting a judge to specify that dismissal is without prejudice would seem to have been designed for cases in which the judge has discretion whether to dismiss, *e. g.,* for want of prosecution, where his decision might be affected by determination whether dismissal should be with or without prejudice, not for cases which he must dismiss as a matter of law. Indeed, it would be possible to read the district judge's power to specify that dismissal be without prejudice under the "unless" clause in the final sentence of Rule 41(b) as limited to "a dismissal under this subdivision," with the result that all other dismissals save the three mentioned—lack of jurisdiction, improper venue, or failure to join a party under Rule 19—and particularly a dismissal on limitations grounds, would necessarily be with prejudice. Finally, we have some doubt whether the last sentence of Rule 41(b) was intended to authorize a judge to dictate to another forum that a dismissal should have a different effect there than in his own court. However, *Bertha Building* said he could do exactly that. So long as that decision stands, we are thus obliged to hold that Judge Murray's later order undercut the basis for Judge McLean's grant of summary judgment for the defendants.

## II.

Defendants argue that Judge McLean's dismissal of the complaint was in any event correct because the action is barred by the New York borrowing statute. Plaintiffs do not dispute that the reference to New York limitations law required in the absence of a statute of limitations in the federal securities laws, Holmberg v. Armbrecht, 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946); UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Fischman v. Raytheon Mfg. Co., 188 F.2d 783, 787 (2 Cir. 1951), includes the borrowing statute, see Cope v. Anderson, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947). They contend, however, that New York's borrowing statute does not apply here because their action was not "based upon a cause of action accruing without the state," but rather on one accruing within it.

▆▆ Defendants' first response is that, in light of the allegations in the Massachusetts complaint, plaintiffs may not now be heard to say that the cause of action accrued in New York. We disagree. The doctrine of collateral estoppel is not applicable here. Clearly the District Court for Massachusetts did not *decide* that the cause of action arose there. The rule in Massachusetts, as in most jurisdictions, is that a general statute of limitations applies to all actions brought in the forum, regardless of where the cause of action accrued. Clarke v. Pierce, 215 Mass. 552, 102 N.E. 1094 (1913); Bonsant v. Rugo, 190 F.Supp. 958 (D.Mass.1961); see generally Restatement (Second) of the Conflict of Laws § 142 (1971). We also do not see any reason why plaintiffs' allegation in the Massachusetts complaint that "the acts and transactions complained of occurred in substantial part within the District of Massachusetts" should bar their contentions here. Although this allegation may be available to the defendants as an admission, it is not necessarily inconsistent with plaintiffs' present assertion that defendants'

acts and transactions also took place in substantial part in New York or their claim that the cause of action arose within New York. We therefore turn to consideration of where the New York courts would hold this cause of action to have accrued.

The traditional view has been that a cause of action for tort arises when and where "the last event necessary to make an actor liable . . . takes place." Restatement of the Conflict of Laws § 377 (1934). Since a tort action traditionally has not been viewed as complete until the plaintiff suffers injury or loss, the cause of action has been considered to arise at the place where this damage was sustained. As applied to a cause of action for fraud or deceit, the closest common law analogy to an action under Rule 10b–5, see Klein v. Auchincloss, Parker & Redpath, 436 F.2d 339, 341 (2 Cir. 1971); 3 Loss, Securities Regulation 1774 (2d ed. 1961); 6 *id.* 3901–02 (1969), and cases there cited, this reasoning leads in the direction of the rule of the First Restatement of Conflicts, § 377, note 4, that "when a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." This rule is followed by an illustration quite pertinent to this case:

6. A, in state X, owns shares in the M company. B, in state Y, fraudulently persuades A not to sell the shares. The value of the shares falls. The place of wrong is X.

▆▆ While we have found no New York decision directly in point, we believe that the New York courts would follow this traditional approach. This prediction follows almost inevitably from New York's long held view, Hibernia Nat'l Bank v. Lacombe, 84 N.Y. 367, 384 (1881), that "the time when the cause of action arises determines, also, the place where it arises, for when that occurs which is the cause of action the place where it occurs is the place where the cause of action arises." See Tandoc v. Luckenbach S. S. Co., 5 App.Div.2d 857, 171 N.Y.S.2d 381 (1st Dep't), leave

to appeal denied, 5 App.Div.2d 989, 173 N.Y.S.2d 992 (1958); Lowell Wiper Supply Co. v. Helen Shop, Inc., 235 F. Supp. 640, 644 (S.D.N.Y.1964) (Weinfeld, J.) ("Claims accrue in New York when the plaintiff first acquires the right to seek a judicial remedy."). This reasoning has led to the view in personal injury tort actions that "It is only the injury to persons or property . . . which constitutes an invasion of a personal right, protected by law, and, therefore, an actionable wrong," Schmidt v. Merchants Despatch Transp. Co., 270 N. Y. 287, 300, 200 N.E. 824, 827 (1936), and therefore that the cause of action accrues for purposes of the borrowing statute in the state where the injury is suffered rather than where the defendant committed the wrongful acts. Myers v. Dunlop Tire & Rubber Corp., 40 App.Div.2d 599, 335 N.Y.S.2d 961 (1st Dep't 1972). Clearly a cause of action for fraud does not arise until loss is suffered; we have every reason to believe that the New York courts would therefore hold that the cause of action accrues *where* the loss is suffered.[2]

This view is strengthened by the weight of authority in other jurisdictions, which generally adopts the view of the First Restatement of Conflicts that a cause of action for fraud arises where the loss is sustained and that loss from fraud is deemed to be suffered where its economic impact is felt, normally the plaintiff's residence. Trussell v. United Underwriters, Ltd., 236 F.Supp. 801, 803 (D.Colo.1964) (application of borrowing statute in litigation under Rule 10b–5); Smith v. New York Life Ins. Co., 208 F.Supp. 240 (S.D.Iowa 1962) (choice of law); Strand v. Librascope, Inc., 197 F. Supp. 743 (E.D.Mich.1961) (choice of law); Boulevard Airport, Inc. v. Consolidated Vultee Aircraft Corp., 85 F.Supp.

876 (E.D.Pa.1949) (liability to service of process); Geller v. Transamerica Corp., 53 F.Supp. 625, 629–630 (D.Del. 1943), aff'd, 151 F.2d 534 (3 Cir. 1945) (choice of law). *Contra,* Smyth Sales, Inc. v. Petroleum Heat & Power Co., 128 F.2d 697 (3 Cir. 1942) (choice of law). Some added support for the view that plaintiffs' loss would be considered to have been suffered where they lived and conducted their investment activities is furnished by holdings that private antitrust claims "arise", for borrowing statute purposes, where the plaintiff's business is located. Seaboard Terminals Corp. v. Standard Oil Co., 24 F.Supp. 1018 (S.D.N.Y.1938), aff'd, 104 F.2d 659 (2 Cir. 1939); Electric Theater Co. v. Twentieth Century Fox Film Corp., 113 F.Supp. 937 (W.D.Mo.1953); Aero Sales Co. v. Columbia Steel Co., 119 F.Supp. 693 (N.D.Cal.1954).

We recognize that the rigid rules of the First Restatement have been largely discredited as a sensible approach to solving choice of law problems; it may well be that if this were a common law action for fraud rather than one based on federal law, New York, under the principles of Babcock v. Jackson, 12 N. Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), and the Second Restatement of the Conflict of Laws § 148, would apply its own law, rather than that of Massachusetts, in determining defendants' culpability. See also Ehrenzweig, Conflict of Laws 558–59 (1962); Ehrenzweig, The Place of Acting in Intentional Multistate Torts: Law and Reason versus the Restatement, 36 Minn.L.Rev. 1, 37–43 (1951); Rheinstein, The Place of Wrong: A Study in the Method of Case Law, 19 Tulane L.Rev. 165 (1944). But, with all respect to the contrary view of a commentator, Siegel, Conflict of Laws, 19 Syracuse L.Rev. 235, 254–56

2. The same considerations would support a prediction that New York would hold that plaintiffs' claims for violations of Regulation T arose where the loss was suffered rather than where the wrongful conduct occurred, even though fraud is not an ingredient of an action for violation of §

7 of the Securities Exchange Act of 1934. See Junger v. Hertz, Neumark & Warner, 426 F.2d 805, 806 n. 1 (2 Cir.), cert. denied, 400 U.S. 880, 91 S.Ct. 125, 27 L.Ed.2d 118 (1970); Klein v. Bower, 421 F.2d 338, 343–344 (2 Cir. 1970).

(1968), we do not think the likelihood of such a holding would justify the further prediction that New York would rule that the state whose law is chosen to govern a defendant's conduct is necessarily the state where the cause of action accrued for purposes of its borrowing statute. One of the policies behind *Babcock* and many of its harbingers, such as Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), and descendants, such as Miller v. Miller, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968), was to afford New York residents the protection of those rules of substantive law underlying which New York had significant policies or as to which New York had important interests. In sharp contrast, the policy behind the borrowing statute is to protect New York resident-defendants from suits in New York that would be barred by shorter statutes of limitations in other states where non-resident-plaintiffs could have brought suit. See National Surety Co. v. Ruffin, 242 N.Y. 413, 417, 152 N.E. 246 (1926); George v. Douglas Aircraft Co., 332 F.2d 73, 77 (2 Cir.), cert. denied, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964); Fullmer v. Sloan's Sporting Goods Co., 277 F.Supp. 995 (S.D.N.Y.1967). The few borrowing statute cases since Babcock afford no inkling that the New York courts are applying its sophisticated teachings, rather than the rigid approach of the First Restatement of Conflicts, to the problem of where a cause of action arose under the borrowing statute. Quite to the contrary, they take a rather simplistic approach, adhering to the mechanical question where the cause of action arose or, in the words of the borrowing statute, whether the "cause of action accru[ed] without the state . . . ." Cellura v. Cellura, 24 App.Div.2d 59, 263 N.Y.S.2d 843 (4th Dep't 1965); Myers v. Dunlop Tire & Rubber Corp., supra, 40 App.Div.2d 599, 335 N.Y.S.2d 961; Daigle v. Leavitt, 54 Misc.2d 651, 283 N.Y.S.2d 328 (Sup.Ct.1967). A recent note, Choice of Law and the New York Borrowing Statute: A Conflict of Rationales, 35 Albany L.Rev. 754, 762 (1971), concludes, although with some regret:

The impact of the conflict of laws decisions discussed above [i. e., Babcock v. Jackson, et al.] on the New York State "borrowing statute" has been non-existent. Except for a few commentaries to the effect that these decisions should affect the borrowing statute, there has been no actual impact on the statute by these decisions.

The result which we thus reach in our interpretation of the New York borrowing statute is neither wholly unexpected nor unique. In George v. Douglas Aircraft Co., *supra*, 332 F.2d at 78, we perceived "no obstacle to predicting that the New York Court of Appeals would consider a cause of action as 'arising' for the purposes of the borrowing statute in a state different from the one whose substantive law would determine liability." And the Third Circuit has reached the same result as we do here, predicting that, despite Pennsylvania's recent adoption of the interest analysis approach to determining the proper choice of substantive law, see Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796 (1964), it would apply "the final significant event" test in determining when and where a cause of action arose under its borrowing statute. Mack Trucks, Inc. v. Bendix-Westinghouse Automatic Air Brake Co., 372 F. 2d 18 (3 Cir. 1966), cert. denied, 387 U. S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967).

However, even with these general principles as to where the New York courts would hold the cause of action to accrue established, we cannot properly affirm Judge McLean's order on the ground that the cause of action here accrued in Massachusetts. The problem is that the record does not contain sufficient facts to enable us to apply our prediction of New York law with complete confidence. We do not know exactly how plaintiffs paid for the securities— whether by check sent from Massachu-

setts or in some other fashion; perhaps if the plaintiffs maintained an open account at defendant's New York offices, and the loss was reflected in that account, this might make some difference. Similarly, we do not know the details as to how the securities were handled. Although on what is now before us, it seems unlikely that plaintiffs can demonstrate that the cause of action arose in New York under the traditional test, they should not be foreclosed from an opportunity to do so.

■ We add a reference to a point that the district court will have to consider if it should conclude the cause of action accrued in New York under the traditional test. In an effort to escape from the collateral estoppel effect that plaintiffs feared would attach to Judge Murray's decision if we held it to include a determination that their cause of action accrued in Massachusetts, plaintiffs suggested at oral argument that the cause of action could be deemed to have "arisen" both in New York and in Massachusetts. The conclusion the plaintiffs would apparently have had us draw is that since the cause of action could be said to have accrued in both states, the borrowing statute would not apply. However, application of the statute depends on whether it can be said that the cause of action accrues "without the state," and if it could fairly be said that the cause of action arose in both New York and Massachusetts, then, under the letter of the borrowing statute, the action would be barred.

Indeed, several states have held, in applying their borrowing statutes, that notwithstanding that the traditional rules would indicate that the cause of action accrued in the forum state, the borrowing statute would bar the action if it could be said that the action also arose in a second state where the statute of limitations had run. The courts of Minnesota, which have a statute virtually identical to New York's, have held this. Pattridge v. Palmer, 201 Minn. 387, 277 N.W. 18 (1937). The Illinois courts have apparently gone further and held that a cause of action arises in any jurisdiction where suit could have been brought on the claim. Strong v. Lewis, 204 Ill. 35, 68 N.E. 556 (1903). See Vernon, Statutes of Limitation in the Conflict of Laws: Borrowing Statutes, 32 Rocky Mt.L.Rev. 287, 302–04 (1960).

There is much to be said for thus recognizing that a cause of action can arise in more than one place and, under an appropriate borrowing statute, is barred if the statute of limitations has run in one where the defendant was available for suit, at least when the one is the state of plaintiff's residence. Such a rule avoids the mechanical nature of the single place of arising theory, allows the defendant to ascertain the applicable time period with certainty while affording the plaintiff a fair opportunity to sue in a convenient forum, and prevents local courts from being cluttered with actions that could have been brought elsewhere but are now time-barred there —particularly actions by out-of-state plaintiffs who had a fair opportunity to sue in their home state but delayed too long, as was the case here. Compare Fullmer v. Sloan's Sporting Goods Co., *supra*, 277 F.Supp. 995. We refrain from now deciding the case on this basis only because the problem does not seem to have been considered by the New York courts and the chances are that, on full development of the facts, the same result will be reached on grounds that would not carry us so far into the field of prophecy. If that should not occur, the district court must address itself to this point.

The order dismissing the complaint is vacated and the cause remanded for further proceedings consistent with this opinion.