James A. ARNEIL and Vernon A.
Stockwell, Plaintiffs,

v.

James B. RAMSEY, Jr., et al.,
Defendants.

No. 75 Civ. 1766.

United States District Court,
S. D. New York.

May 12, 1976.

Spengler, Carlson, Gubar & Churchill, New York City, Lovitt & Hannan, Inc., San Francisco, Cal., for plaintiffs.

Milbank, Tweed, Hadley & McCloy by Edward J. Reilly and Norman R. Nelson, New York City, for defendant New York Stock Exchange.

Milgrim, Thomajan & Jacobs by Roger Milgrim, New York City, for defendants Ramsey, Vanderbilt & Lendman.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

On April 11, 1975, plaintiffs filed a complaint alleging, in fourteen separate counts, numerous violations of Sections 6, 10(b) and 20 of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. §§ 78f, 78j and 78t, and Rule 10b–5, 17 C.F.R. § 240.10b–5. In addition plaintiffs have asserted various claims of common law fraud and breach of a fiduciary duty.

Jurisdiction is premised on § 27 of the 1934 Act, 15 U.S.C. § 78aa and principles of pendent jurisdiction.

*The Parties.*

Plaintiffs James Arneil and Vernon Stockwell are long-time residents of Wenatchee, Washington. Mr. Arneil is an attorney and Mr. Stockwell is the manager and part owner of two apple orchards.

Defendant New York Stock Exchange, Inc. ("the Exchange") is a not-for-profit corporation organized under the laws of the State of New York and registered as a national securities exchange under § 6 of the 1934 Act.

Defendant Blair and Co., Inc. ("Blair") was a member organization of the Exchange and a stockbroker. On September 25, 1970, Blair ceased operations, and the Exchange appointed Mr. Patrick E. Scorese as liquidator for Blair.

Defendant James B. Ramsey, Jr. is a former President of Blair. Defendant Oliver DeG. Vanderbilt is a former Chairman of the Board of Blair. Defendant William M. Lendman is also a former President of Blair. Ramsey, Vanderbilt and Lendman

will sometimes be referred to collectively as the individual defendants.

*The Complaint.*

In Count I, plaintiffs claim that all defendants violated Rule 10b–5 in April of 1969 by inducing and encouraging the plaintiffs to purchase non-voting common and preferred stock of Blair and to become subordinated lenders to Blair. Count II charges all defendants except Blair with aiding and abetting Blair in the sale of its securities in violation of Rule 10b–5. Count III alleges a conspiracy to violate Rule 10b–5 in that the Exchange and the individual defendants agreed to obtain additional capital for Blair through the sale of securities to plaintiffs without adequate disclosure of material facts. Count IV asserts that the Exchange and the individual defendants were persons in control of Blair (as defined by § 20(a) of the 1934 Act) and as such owed a duty to the plaintiffs in connection with the purchase of these securities and issuance of secured demand notes.

Counts V through XII allege numerous violations of § 6 of the 1934 Act. The Exchange is the only defendant on these § 6 counts, discussed in more detail below.

Count XIII alleges that all the defendants are guilty of common law fraud in connection with the purchase of the securities and the giving of the notes.

Finally, Count XIV asserts that the Exchange breached a fiduciary duty which it owed to the plaintiffs by favoring its own interests and the interests of its members over the interests of the plaintiffs and the general public.

All defendants except Blair[1] have moved for summary judgment pursuant to Rule 56, F.R.Civ.P. The individual defendants move solely on the ground that the 10b–5 and common law fraud claims (the only counts in which they are named) are time barred by the applicable statute of limitations. The Exchange bases its motion both upon the statute of limitations point and on the ground that there is no genuine issue as to any material fact.

*The 10b–5 Claims (Counts I–IV).*

■ The Securities Exchange Act of 1934 prescribes no period within which actions must be brought. Nor is there any general federal statute of limitations applicable to all civil actions alleging violations of federal law. However, it is well settled that where Congress creates federal rights but does not prescribe a time period for enforcement, a federal court will apply the statute of limitations law of the forum state. *International Union, United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 703–05, 86 S.Ct. 1107, 1111–1113, 16 L.Ed.2d 192, 198–199 (1966); *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970).

Our reference to New York law to determine whether or not the action is timely includes its "borrowing statute," New York CPLR § 202. *Cope v. Anderson*, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); *Sack v. Low*, 478 F.2d 360, 365 (2d Cir. 1973); *Hornblower, Weeks, Hemphill & Noyes v. Burchfield*, 366 F.Supp. 1364, 1367 (S.D.N.Y.1973). That statute provides:

"An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."

■ As noted in *Korn v. Merrill*, 403 F.Supp. 377, CCH Fed.Sec.L.Rep. ¶ 95,355 at 98,767 (S.D.N.Y.1975), a New York court will borrow the limitations law of a foreign state *only where* (1) the cause of action being sued upon accrued outside of New York, *and* (2) the plaintiff is not a resident of New York.

---

1. On November 14, 1975 Blair & Co., Inc. obtained a judgment permanently enjoining Arneil and Stockwell from prosecuting this action on the ground that any claims which plaintiffs may have had against Blair were discharged by the Bankruptcy Court's Order of Confirmation, dated October 2, 1973. *In re Blair & Co., Inc.*, 70 B 755 (S.D.N.Y. Nov. 14, 1975).

■ Here the second condition is clearly satisfied. Plaintiffs are, and at all relevant times have been, residents of the State of Washington. While plaintiffs contend that they were "doing business" in New York by reason of the brokerage accounts which they maintained with Blair in New York City, such business activities do not establish New York residence for purposes of the borrowing statute. See *American Lumbermens Mut. Cas. Co. of Ill. v. Cochrane*, 129 N.Y.S.2d 489 (Sup.Ct.), *aff'd without opinion*, 284 App.Div. 884, 134 N.Y.S.2d 473 (1st Dept. 1954), *aff'd without opinion*, 309 N.Y. 1017, 133 N.E.2d 461 (1956) [foreign corporation licensed to do business in state is not a resident within meaning of predecessor borrowing statute].

■ The first condition creates a more complicated issue. *Sack v. Low, supra* at 365, holds that New York would follow the rule of the First Restatement of Conflicts, § 377, note 4, that ". . . when a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made." The Court went on to state that ". . . loss from fraud is deemed to be suffered where its economic impact is felt, normally the plaintiff's residence." *Id.* at 366. Applying this test to the facts of this case, it is clear that the cause of action accrued in the State of Washington because it is there that plaintiffs' pocketbooks are situated.

Plaintiffs' point to dictum in *Sack v. Low, id.* at 368, that it might make some difference ". . . if the plaintiffs maintained an open account at defendant's New York offices, and the loss was reflected in that account." They claim that both their stock in Blair and their secured demand notes were held by Blair in New York City and that when the stock declined in value and the collateral securing the note was converted into cash and sold in July 1970 in order to apply the proceeds to pay off the note, any value which they had in their accounts at Blair was wiped out.

However, reading the dictum quoted above in context, it is clear that the Court did not single out the place where the account was maintained as the sole or controlling criterion for determining where the cause of action accrued. The method of payment, and other details were also considered important factors. This issue was mentioned but not actually decided by the Court of Appeals because of the insufficiency of the record on appeal. The Court concluded that while it was unlikely plaintiffs could demonstrate that the cause of action arose in New York under the traditional test, they should not be foreclosed from trying to do so.

This dictum read in context, does not change the result which flows from the application of the strict test of the First Restatement of Conflicts.

■ It is sufficient to point out that plaintiffs here executed the promissory notes, and mailed their checks to pay for the stock from Washington, and that they sent at least some of the securities which were to serve as the collateral for the secured demand notes from Washington to New York. And even though the account was liquidated in New York, it cannot be denied that the impact of losing their investment was experienced first and foremost by plaintiffs at their homes in Wenatchee, Washington.[2]

Thus both prerequisites to applicability of the borrowing statute have been satisfied. A New York court would therefore apply the statute of limitations of the State of Washington, which would be applicable to the claims.

---

2. Perhaps correct analysis compels a conclusion that the cause of action accrued both in New York and Washington. If so, then the language of the borrowing statute ("accruing without the state") would still make it applicable to this action. As Judge Friendly stated in *Sack v. Low*, 478 F.2d at 368, ". . . [s]uch a rule avoids the mechanical nature of the single place of arising theory . . .." However, since the New York courts have not yet considered this question, the Second Circuit specifically declined to base its decision on that ground. This Court will therefore follow the traditional "single place of arising" analysis and concludes that under the circumstances of this case, that place is the State of Washington.

Washington Rev.Code § 4.16.080(4) states:

"Actions limited to three years. Within three years:

\*    \*    \*    \*    \*    \*

4. An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

The Ninth Circuit Court of Appeals has held that this Washington statute should be applied to claims for relief under Rule 10b–5. *Douglass v. Glenn E. Hinton Investments, Inc.*, 440 F.2d 912 (9th Cir. 1971); *Errion v. Connell*, 236 F.2d 447 (9th Cir. 1956).

█ If plaintiffs discovered "the facts constituting the fraud" prior to April 11, 1972, Counts I–IV would be time-barred.

Plaintiffs allege that certain risk factors were not disclosed to them when they bought securities of Blair in April of 1969. But by the summer of 1970, plaintiffs had apparently discovered that the true financial and operational status of Blair had been concealed from them at the time of their purchase. On July 23, 1970, Mr. Stockwell, acting for himself and as an agent for Mr. Arneil, sent a letter to defendant Ramsey, then President of Blair, asserting that "[t]he extremely critical nature of Blair's problems were not known by us until this time." Furthermore in a handwritten note accompanying this letter, he threatened immediate action if anyone at Blair disposed of the stock securing their notes.

These statements are compelling evidence that at least by the summer of 1970, the plaintiffs knew enough of the basic facts constituting the alleged fraud to demand rescission of the transaction. Yet in spite of the threat to take immediate action, they did nothing for almost five years after their collateral was converted into cash and sold to pay off the demand note. I conclude that the statutory period began to run at that time and did not await "[the] leisurely

discovery of the full details of the alleged scheme." *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970); *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 410 (2d Cir. 1975).

There is one final point in connection with the statute of limitations issue, applicable only with respect to the 10b–5 claims against the Stock Exchange. On March 8, 1973, a complaint was filed in the United States District Court for the Northern District of California, *Carr v. New York Stock Exchange*, No. C–73–0367–SW. Plaintiffs therein sought to maintain a class action on a claim based on exactly the same activities of the Exchange pleaded in this action. The original complaint described the class as former employees of Blair, who had purchased common and preferred stock in Blair and other companies. Since neither Arneil nor Stockwell were ever employees of Blair, this description of the class would have excluded them.

However, on December 17, 1974, in connection with plaintiff's motion for leave to amend his complaint in *Carr*, the description of the class was expanded to include persons, except officers or directors of Blair or their families, who purchased securities of Blair subsequent to March 8, 1969, and prior to the earliest date, if any, that the omitted material facts were publicly disclosed.

Leave to amend was thereafter granted and on March 28, 1975, an amended complaint was filed containing this description of the class with certain additional exclusions not relevant here. It is clear that the amended description of the proposed class was broad enough to include Arneil and Stockwell. A motion to certify this class was denied on April 30, 1976.

In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), after the district court had refused to certify the class because of a failure to satisfy the numerosity requirement, defendants contended that claims of intervenors who would have been in the class had it been certified were barred by the applicable statute of limitations. The Su-

preme Court, however, held that the filing of a class action ". . . suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."

■ Arneil and Stockwell contend that the statute of limitations was tolled as to their claims when the original *Carr* complaint was filed on March 8, 1973. However, at that time they were not asserted members of the class, since its description was then limited to employees of Blair. The earliest point in time at which they would qualify as asserted members would be December 17, 1974, when the proposed amended complaint was filed with a motion for leave to amend. Not until then could it be said that Arneil and Stockwell were relying on the institution of the California action to protect their rights. Since the statute commenced running on July 23, 1970, when the plaintiffs acquired knowledge of the facts constituting the alleged fraud, more than three years had elapsed before they qualified as asserted members of the class. Thus the holding in *American Pipe* is of no help to plaintiffs. All defendants are therefore entitled to summary judgment on Counts I–IV.

### Common Law Fraud (Count XIII).

All defendants are entitled to summary judgment on plaintiffs' claim against them for common law fraud. The same three year Washington statute of limitations is a bar to plaintiffs' recovery on Count XIII.

### The § 6 Claims (Counts V–XII).

Section 6(a)(1) of the 1934 Act, 15 U.S.C. § 78f(a)(1), requires that a national securities exchange registered thereunder must *agree* "to comply, and to enforce so far as is within its powers compliance by its members, with the provisions of [the Act], and

any amendment thereto and any rule or regulation made or to be made thereunder."

■ *Baird v. Franklin*, 141 F.2d 238 (2d Cir.), *cert. denied* 323 U.S. 737, 65 S.Ct. 38, 89 L.Ed. 591 (1944), holds that a private cause of action exists against an exchange which breaches its statutory duty to enforce compliance with the Act by its member firms. It would seem that the applicable statute of limitations should be New York CPLR § 214(2), which provides for a three year period for actions "to recover upon a liability, penalty or forfeiture created or imposed by statute." However in *Weinberger v. New York Stock Exchange*, 335 F.Supp. 139 (S.D.N.Y.1971), Judge Gurfein held that by the above agreement, the Exchange had entered into a contract with the SEC to supervise its member firms and that plaintiff, a former limited partner in a bankrupt firm, could sue as a third-party beneficiary for breach of that contractual duty. After noting the question had been specifically left open in *Baird*, Judge Gurfein concluded that a § 6 claim should be governed by the limitations period applicable to contract actions and not by the shorter period applicable to actions for breach of a statutory duty.[3] See also *Fischer v. New York Stock Exchange*, 408 F.Supp. 745, CCH Fed.Sec.L.Rep. ¶ 95,416 at 99,108 (S.D. N.Y.1976).

I find that plaintiffs' § 6 claims (Counts V–XII) are governed by the limitations period applicable to contracts.

■ The New York statute of limitations should be applied to these claims. Although plaintiffs third party beneficiaries were residents of Washington, the contract on which they sue was made between the Exchange and the SEC, and presumably was to be performed in New York where the Exchange has its principal place of business. If, as alleged, the New York Stock Exchange breached its contractual duty to

---

**3.** Although the Securities Acts Amendments of 1975, Pub.L. No. 94–29, 89 Stat. 104, June 4, 1975, eliminated any reference to "an agreement" in § 6, these amendments did not become effective until December 1, 1975. In *Lank v. New York Stock Exchange*, 405 F.Supp. 1031, CCH Fed.Sec.L.Rptr. ¶ 95,395 at 99,012–13, n. 16 (S.D.N.Y.1975), Judge Lasker pointed out that these changes may ultimately have some effect on the third-party beneficiary theory of recovery, but could not affect preexisting rights.

supervise Blair, that breach occurred in New York. Since it cannot be said that the cause of action accrued without the state, the New York borrowing statute is inapplicable. Applying therefore New York CPLR § 213(2), which provides a six year limitation period for actions based upon a contractual obligation or liability, it is clear that plaintiffs' § 6 claims are not time-barred.

*Are There Material Issues of Fact Remaining in Dispute?*

A. *The § 6 Claims (Counts V–XII).*

 ▇ Since these counts are not time-barred, the Exchange can only prevail on its motion for summary judgment if it can show the absence of *any* genuine issue as to *any* material fact. On a motion for summary judgment, this Court cannot try issues of fact by affidavits; it can only determine whether there are issues to be tried. This rule enjoys great sanctity in this Circuit. *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317 (2d Cir. 1975); *Judge v. City of Buffalo*, 524 F.2d 1321 (2d Cir. 1975); *Jaroslawicz v. Seedman*, 528 F.2d 727 (2d Cir. 1975).

 ▇ Not all § 6 claims are of equal merit. Some may be ripe for summary judgment because the only issues they raise are frivolous or immaterial, requiring no trial in order to be resolved. *Beal v. Lindsay*, 468 F.2d 287 (2d Cir. 1972). Into this category fall Counts VI, IX and X which allege violations of § 6(a)(2), (3) and (4). It is clear that these sections impose no contractual duties on the Exchange to enforce its rules but refer only to information which an Exchange must file with the SEC. The Exchange is entitled to summary judgment on Counts VI, IX and X.

 ▇ In Count XII plaintiffs claim that the Exchange breached its § 6 duty by failing to enact adequate rules for the protection of subordinated lenders. They point to the amendment of Rule 313, adding subsection (d) in December of 1971 as evidence that the rules in 1969 were inadequate, in failing to provide for either registration of member securities under the Securities Act of 1933 and/or disclosure of material risk factors.

Plaintiffs' claim here is based on a misreading of Rule 313(d). Before 1970, stock in member firms of the Exchange was not freely transferable in the open market. In 1970 this policy was changed to allow trading in some classes of member-firm securities. Section 313(d) was enacted in response to this change; that subsection provides that a member organization when issuing a security for purposes or raising capital under Rule 325 (the net capital rule), must furnish to the Exchange an opinion of counsel "as to whether or not the securities being offered or sold need be registered under the 1933 Act . . . ." and if registration was necessary, a statement that the Prospectus not contain false or misleading statements or omissions of material fact. 2 CCH N.Y.S.E. Guide ¶ 2313(d) (1971). Its purpose was to insure that funds which member organizations used to satisfy the Exchange's net capital rule would not be subject to claims for rescission for violations of the 1933 Act. Since public offerings of member organization securities were impermissible in 1969, when plaintiffs made their investment, the failure to have a rule such as 313(d) at that time was not a breach of duty under § 6.

 ▇ There is a further point which should be made with respect to Count XII. Whatever theoretical advantages there might be to having the Exchange enforce disclosure with respect to its member's securities, there is ample authority for the proposition that § 6 does not support an action against an exchange for failure to enact such a rule. *Rich v. New York Stock Exchange*, 329 F.Supp. 1122 (S.D.N.Y.1974), *rev'd. on other grounds*, 522 F.2d 153 (2d Cir. 1975); *Marbury Management v. Kohn*, 373 F.Supp. 140 (S.D.N.Y.1974); *Kroese v. New York Stock Exchange*, 227 F.Supp. 519 (S.D.N.Y.1964). Investors who believe that the Exchange should have better or more stringent rules should apply to the SEC to alter or supplement these rules pursuant to

its power under § 19(b) of the 1934 Act, 15 U.S.C. § 78s(b).

The Exchange is entitled to summary judgment on Count XII.

The only § 6 counts which remain to be discussed are V, VII, VIII and XI. Plaintiffs contend in Counts V and VII that the Exchange should have required them to sign "knowledgeability letters" when they made their investment in Blair. In these letters, which were supplied by the Exchange to potential investors in member firms, the individuals would state that they had made an investigation of the firm's position, that they had seen the relevant financial information, that they were familiar with the restrictions, if any, which the Exchange had placed on the firm, and that they were not relying on the firm's status as a member of the Exchange or the Exchange's surveillance of the firm's capital position.

Plaintiffs claim that in certain situations the Exchange required knowledgeability letters before it would approve an individual as a subordinated lender. These letters helped to point out to investors material risk factors in their decision to lend money to a brokerage firm. Plaintiffs' contention in short is that by failing to require them to sign such a letter in this case, the Exchange breached its duty. As a result plaintiffs assert that they made their investment decision without knowledge of specific risk factors which would have been known to them had the Exchange performed its duty.

The director of the Exchange's Member Firms Department denied that such letters were ever required (Affidavit of Robert M. Bishop, sworn to December 15, 1975, at p. 16). Since nothing in the Exchange rules or the rules of the SEC required knowledgeability letters, the Exchange asserts that there could be no breach of duty under § 6. However, the Exchange admitted that in the past it did require such letters in certain situations, and in the Fall of 1968, it had considered whether to require investors in Blair to sign such letters. Mr. Bishop went on to say that the decision to require them was always made *ad hoc* and ". . .

under informal standards which developed as time went along." Id.

While it is true that there were no formal rules with respect to knowledgeability letters, if the Exchange undertook to require them in some situations, then it would have a duty to make and carry out these *ad hoc* decisions consistently and in a manner which would protect investors and accord with just and fair principles of trade.

Whether the Exchange satisfactorily performed this duty is unclear from the present record. The questions as to precisely what these *ad hoc* standards and practices were at the time plaintiffs made their investments, and how and by whom the decisions were made remain uncertain at this time. These are issues which cannot be resolved by affidavits on this motion.

Since there are unresolved factual issues with respect to these knowledgeability letters, the Exchange's motion for summary judgment on Counts V and VII is denied.

Finally, the Exchange's motion with respect to Counts VII and XI must be denied. By these claims, plaintiffs assert that the Exchange breached its duty of enforcing compliance with its rules by allowing Schwabacher, a weak firm which was experiencing great difficulties with its back-office operations; had been under investigation both by the Exchange and the SEC; and which had been placed under restrictions, to merge with Blair in March 1969, just before plaintiffs made their investments. Plaintiffs further allege that the Exchange failed to impose timely discipline on Blair once it knew of the serious difficulties facing the firm, and suppressed material information concerning violations of law and the rules of the Exchange.

While the Court agrees with the defendant Exchange that plaintiffs' contention that the Exchange had a statutory duty to prevent violations of its rules is an incorrect statement of the law, both of these Counts do allege a breach of the duty to supervise the activities of Schwabacher, and of Blair. Here the Exchange does not deny that it had notice of improprieties committed by

Schwabacher. In fact at the time of the merger, the Exchange was preparing privately to censure Mr. Schwabacher and his firm for numerous violations of the rules.

 Having knowledge of these violations, the Exchange had a duty to take remedial action. Whether its remedy was proper raises issues of fact which cannot be resolved without a full trial.

The import of this discussion is not that the Exchange breached its duty when it approved the merger without foreseeing the difficulties which would and did result for Blair. But there are factual issues concerning the propriety of the merger which plaintiffs should be allowed to litigate. See, *Hughes v. Dempsey Tegler*, 534 F.2d 156 (9th Cir. 1976).

Unlike *Hochfelder v. Midwest Stock Exchange*, 503 F.2d 364 (7th Cir.), *cert. denied* 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1971) and *Butterman v. Walston & Co.*, 387 F.2d 822 (7th Cir. 1967), *cert. denied*, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968), where summary judgment was granted to the Exchange, there are facts present here which support a possible inference that the Exchange had knowledge of continuing rule violations. The question then becomes: Was the Exchange's response proper in light of all the facts and circumstances which it knew or should have known? This raises issues of fact as to whether the Exchange proceeded with the requisite due care in its regulation and supervision of a member firm. *Cf. Evans v. Kerbs & Co.*, 411 F.Supp. 616, CCH Fed.Sec. L.Rptr. ¶ 95,459 at 99,324 (S.D.N.Y.1976). The propriety of the regulatory actions taken by the Exchange both before and after the merger are at issue here, and summary judgment on Counts VII and XI must therefore be denied.

B. *The Fiduciary Duty Count (Count XIV).*

 Count XIV may also be disposed of on this motion. There plaintiff claims that the Exchange breached a fiduciary duty which it owed to them. However, plaintiffs have cited no authority to support their claim that the Exchange was in a fiduciary relationship with them. In fact, *Baird v. Franklin*, 141 F.2d 238, 239 (2d Cir. 1944) holds that the Exchange is not in a fiduciary relationship with the public customers of its member firms. Here plaintiffs were public customers of Blair who later became subordinated lenders and shareholders in the firm. Their status is not so different from that of the plaintiffs in *Baird*. Since there was no fiduciary duty owed to the plaintiffs here, there was no breach. The Exchange is thus entitled to summary judgment on Count XIV.

### CONCLUSION

As to the motion of the individual defendants for summary judgment, which is granted in all respects, there is no just cause for delay, and a final judgment may be settled on notice. Rule 54(b), F.R.Civ.P.

The Exchange's motion is granted with respect to Counts I, II, III, IV, VI, IX, X, XII, XIII and XIV only, and is in all other respects denied.

So Ordered.