Joseph MARCERA, John Dillman, Chuck Whipple, Kenneth Wright, Robert J. Borucki, and Frank Gleason, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

Stephen CHINLUND, Joseph Wasser, Dorothy Wadsworth, Individually and in their official capacities as members of the New York State Commission of Correction; Andrew P. Meloni, in his official capacity as Sheriff of Monroe County; Carl Draxler, Individually and as Sheriff of Chemung County; Undersheriff Sherwood O'Dell; and John Ackerson, Individually and in their official capacities and on behalf of all persons similarly situated, Defendants.

No. CIV–76–508C.

United States District Court,
W. D. New York.

Sept. 30, 1981.

As Amended Oct. 1, 1981 and Feb. 4, 1982.

Monroe County Legal Assistance Corp. (Ian C. DeWaal, Rochester, N. Y., of counsel), for Monroe County plaintiffs and plaintiff class.

Joan M. Kronman, Buffalo, N. Y., for Chemung County plaintiffs.

Robert Abrams, Atty. Gen. of the State of New York, Albany, N. Y. (James L. Kennedy, Asst. Atty. Gen., Buffalo, N. Y., of counsel), for defendants Chinlund, Wasser, and Wadsworth.

John D. Doyle, Monroe County Atty., Rochester, N. Y. (Joseph C. Pilato, and Christine E. Burke, Deputy County Attys., Rochester, N. Y., of counsel), for defendant Meloni.

Louis J. Mustico, Chemung County Atty., Elmira, N. Y., for defendants Draxler, O'Dell, and Ackerson.

Peter R. Kehoe, Troy, N. Y., for New York State Sheriffs' Assn.

CURTIN, Chief Judge.

Many of the pending questions in this action were once adjudicated in prior proceedings.[1] When the United States Supreme Court, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281, vacated and remanded the most recent appellate decision in this case, however, these issues once again became subject to dispute. The parties have reasserted them to this court for resolution.

The constitutional issue presented by this case is whether pre-trial detainees in county jails have a right to have contact visits with their friends and families. Because I view this matter as one which preferably would be handled at the state level, see *Rhodes v. Chapman*, —— U.S. ——, —— - —— & n.16, 101 S.Ct. 2392, 2401–02 & n.16, 69 L.Ed.2d 59 (1981); *Procunier v. Martinez*, 416 U.S. 396, 404–05 & n.9, 94 S.Ct. 1800, 1806 & n.9, 40 L.Ed.2d 224 (1974), I have been reluctant to press this case forward due to the possibility of a resolution in the New York State courts.

Nevertheless, the lack of significant action at the local level[2] and the remands of the Supreme Court and the Court of Appeals for the Second Circuit compel me to confront the questions posed by plaintiffs. See footnote 1, *supra*. Defendants have, until recently, argued vigorously that *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) absolutely voids any possible federal constitutional claim with respect to contact visitation. Because recent case law convinces me otherwise, I denied

1. This action began in 1976. The district court in Rochester, New York denied plaintiffs' motion for certification of a defendant class and preliminary relief in June 1977. In November 1977 the Second Circuit Court of Appeals reversed and remanded for a hearing on the class certification and preliminary relief applications. 565 F.2d 253 (2d Cir. 1977) (*per curiam*). Following the mandated hearing, the district court once again denied plaintiffs' motion for defendant class certification, most of the requested plaintiff class certification, and most of the requested preliminary relief. On appeal, the Second Circuit vacated the district court order with specific instructions to certify the requested classes of plaintiffs and defendants and to grant preliminary relief on a class-wide basis. 595 F.2d 1231 (2d Cir. 1979). In June 1979, the

Supreme Court remanded the circuit court's decision to reconsider in light of its just-decided opinion in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Second Circuit remanded this case to my docket to consider according to the Supreme Court's instructions. In my Order entered July 1, 1981, I denied defendants' motion to dismiss the complaint. I reiterated my decision at oral argument on July 7, 1981.

2. Until recently, state regulations mandating contact visitation had been enjoined. *See* note 8. Since this action began in 1976, only eight county facilities in the proposed class have taken steps to offer contact visits. *See* Plaintiffs' Letter, filed August 11, 1981.

defendants' motion to dismiss.[3] *See* Order entered July 1, 1981. The time has come to dispose of many of the remaining motions and to move this case towards a conclusion.

## I. PLAINTIFFS' MOTION TO AMEND COMPLAINT[4]

 Plaintiffs moved in 1979 to add a pendent state constitutional claim[5] and additional requests for relief. As a rule, a motion to amend must be granted "freely when justice so requires," Fed.R.Civ.P. Rule 15(a), unless there is undue delay, bad faith, or a dilatory motive on the part of the movant, or when the opposing party would be unduly prejudiced by the amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

 Defendants claim that if plaintiffs are now allowed to amend their complaint, they will be unjustifiably prejudiced by the inordinate time which has passed since plaintiffs brought their motion. I do

*State Teachers Retirement Board v. Fluor Corporation and Manufacturers Hanover Trust Company*, 654 F.2d 843, (2d Cir. 1981), the Court of Appeals reversed the district court's refusal to let plaintiffs add entirely new claims three years after they initiated their action. The court emphasized that, "Mere delay, . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Id.* at 856.

As in *State Teachers Retirement Board*, plaintiffs' amendment will not work any undue burden or hardship on defendants. The proposed additional claim relies on the identical facts as those underlying plaintiff's federal claim. No new problems of proof will result. The new claim will not involve much new discovery, if any. No summary judgment motions have yet been resolved. At most, defendants will now be responsible for analyzing and assessing the applicable state law, with which they are

---

**3.** In *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Court expressly declined to address the issue of contact visitation rights which was decided in plaintiffs' favor in the decision issued prior to Supreme Court review *sub nom. Wolfish v. Levi*, 573 F.2d 118, 126 n.16 (2d Cir. 1978). *Bell v. Wolfish*, 441 U.S., at 450 n.40, 99 S.Ct. at 1885 n.40. Furthermore, although *Bell v. Wolfish* refused to limit restrictions on detainees on eighth amendment and due process grounds, the Second Circuit's contact visitation holding was based on first amendment grounds. *Wolfish v. Levi, supra.* Thus, regardless of the viability of plaintiffs' due process and eighth amendment claims, their first amendment claim remains tenable.

The Supreme Court recently agreed to review *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981) which, *inter alia*, discussed the question of constitutional contact visitation rights of pre-trial detainees. *Ledbetter v. Jones*, —— U.S. ——, 101 S.Ct. 3106, 69 L.Ed.2d 970, (1981). The court in *Jones v. Diamond* held that whether or not contact visitation rights should be accorded pre-trial detainees could be decided only after a hearing to determine the jails' security requirements. *Id.* at 1377.

Other circuit courts have considered the constitutional dimensions of contact visitation as well. *See Ramos v. Lamm*, 639 F.2d 559, 580–81 & n.26 (10th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Jordan v. Wolke*, 615 F.2d 749, 753–54 (7th Cir. 1980) (J. Swygert, dissenting); *In-*

*mates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 758–59 (3d Cir. 1979); *Feeley v. Sampson*, 570 F.2d 364, 373 (1st Cir. 1978); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (*per curiam*). As opposed to *Jones v. Diamond*, these courts found no constitutional right to contact visitation. On the other hand, the Fifth and Second Circuit Courts of Appeals found, prior to *Bell v. Wolfish, supra*, that a contact visitation program for pre-trial detainees could not be arbitrarily denied. *See Miller v. Carson*, 563 F.2d 741, 748–49 (5th Cir. 1977); *Rhem v. Malcolm (Rhem II)*, 527 F.2d 1041, 1043 (2d Cir. 1975).

**4.** This case has been consolidated with *Whipple v. Draxler*, Civ. 78–368C, a case involving contact visitation rights in the Chemung County Jail. The amended complaint in *Whipple v. Draxler* included a state constitutional claim. I decline to rule whether the state claim presented in *Whipple* attaches generally to the consolidated actions as a whole, a question not raised by either party.

**5.** In 1979 the New York Court of Appeals determined that female pre-trial detainees in the Monroe County Jail were entitled under the state constitution to contact visits with family and friends. *Cooper v. Morin*, 49 N.Y.2d 69, 424 N.Y.S.2d 168, 399 N.E.2d 1188 (1979), *cert. denied*, 446 U.S. 984, 100 S.Ct. 2965, 64 L.Ed.2d 840 (1980). Plaintiffs moved to add their pendent state claim soon after this decision.

abundantly familiar,[6] in addition to the federal law which has circumscribed this action so far.

In sum, defendants have not shown that plaintiffs' amendment will unduly prejudice their ability to defend their lawsuit. Plaintiffs' motion to amend their complaint is therefore granted *nunc pro tunc* as of the date of the initial complaint.

## II. PLAINTIFFS' MOTION FOR CLASS ACTION CERTIFICATION

■ Plaintiffs move for certification of both a plaintiff class and a defendant class.[7] They request that the plaintiff class include all pre-trial detainees held in New York State county jails which, as a general rule, do not operate a contact visitation program for pre-trial detainees and which are not the focus of another lawsuit requesting contact visits. The proposed defendant class is comprised of all sheriffs in charge of the county jails where the plaintiff class members are confined.

As a threshold matter, Monroe County defendants suggest that class certification of this action must be denied because so much time has elapsed since the lawsuit was remanded to this court. To support their argument, they point to Fed.R.Civ.P. Rule 23(c)(1) which requires, "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Defendants protest that class certification at this late date would violate this rule particularly because the parties have undergone many changes in the interim.

Defendants' position is not convincing. As I explained to the parties at oral argument on July 7, 1981, any delay in deciding the class certification motion was occasioned by the court's desire to give the sheriffs a first opportunity to rectify the problems.[8] Plaintiffs stated at oral argument and in a subsequent letter memorandum dated August 6, 1981 that thirty-five county jails still have no operable contact visitation program. Inasmuch as the alleged constitutional violations persist and there is now no arguable state court bar to the sheriffs' obligation to provide such programs, *see* footnote 8, I find that class certification at this time would be well within the bounds of timeliness and practicality.

■ Class certification, of course, cannot obtain unless the other requirements of Rule 23 of the Federal Rules of Civil Procedure are also present. The strict requirements of Rule 23 govern class certification of both plaintiff and defendants classes. *Marcera v. Chinlund*, 595 F.2d at 1237; Note, *Defendant Class Actions*, 91 Harv.L. Rev. 630, 633 (1978). The moving party must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

---

6. As indicated in footnote 5, plaintiffs' state law claim is based directly on *Cooper v. Morin*, 49 N.Y.2d 69, 424 N.Y.S.2d 168, 399 N.E.2d 1188 (1979), *cert. denied*, 446 U.S. 984, 100 S.Ct. 2965, 64 L.Ed.2d 840 (1980). The claims in that action arose in Monroe County. Several of the named defendants in this action were also defendants in *Cooper v. Morin*.

7. In February 1979 the Second Circuit ordered the district court to certify plaintiff and defendant classes as requested by plaintiffs. 595 F.2d 1231 (2d Cir. 1979). Following the Supreme Court's subsequent vacatur and remand of the decision on other grounds, plaintiffs resubmitted their motion for class certification to this court.

8. Fifty-one county sheriffs initiated a state court action in 1976 *inter alia* to enjoin the implementation of state regulations regarding contact visitation (9 NYCR § 7008). Preliminary injunctive relief was granted early on. *McNulty v. Chinlund*, 62 A.D.2d 682, 406 N.Y. S.2d 558, 561 (3d Dep't 1978). On May 7, 1981, however, State Supreme Court Justice Edward S. Conway granted defendants' motion to dismiss the sheriffs' complaint as it relates to contact visitation on the basis of *Cooper v. Morin*, 49 N.Y.2d 69, 424 N.Y.S.2d 168, 399 N.E.2d 1188 (1979), *cert. denied*, 446 U.S. 984, 100 S.Ct. 2965, 64 L.Ed.2d 840 (1980). *McNulty v. Chinlund*, 108 Misc.2d 707, 438 N.Y.S.2d 734 (Sup.Ct.Alb. County 1981).

the interests of the class. In addition one of the three conditions of Rule 23(b) must be met. Because a defendant class presents potentially more difficult problems than a plaintiff class, it is logical to consider first whether the putative defendant class qualifies for certification. *See generally* Williams, J., *Some Defendants Have Class: Reflections on the GAP Securities Litigation*, 89 F.R.D. 287, 290–93 (1981).

### A. Defendant Class

#### 1. Numerosity

According to plaintiffs, thirty-five sheriffs in New York continue to administer county jails which provide no contact visitation program for pre-trial detainees. This number is not contested by defendants. While thirty-five class members do not comprise a tremendously large group, the impracticability of joinder is substantial because the sheriffs are scattered throughout the state. The numerosity test is therefore met.

#### 2. Commonality of Legal and Fact Questions

As the putative class is defined, the "common questions of law and fact" test is also satisfied. The challenged conduct is alleged as to each defendant in the class. The relevant law is equally applicable to all class members.

#### 3. Typicality of Defenses

When faced by the class certification question previously, the Court of Appeals for the Second Circuit discussed the "typicality of defenses" argument in detail.

*Marcera v. Chinlund*, 595 F.2d at 1238–39. That court found that the twin defenses of security and prohibitive cost are those invoked by the named defendants and would undoubtedly be asserted by the others. Indeed, as the court observed, security and expense were the paramount defenses advanced by fifty-one sheriffs in a state class action to enjoin enforcement of New York's contact visitation regulations. *See McNulty v. Chinlund*, 62 A.D.2d 682, 406 N.Y.S.2d 558, 561 (3d Dep't 1978).

Defendants insist, however, that each facility is unique, thereby necessitating a separate defense for each. Structural and administrative variances among the county jails may well be significant with respect to fashioning an ultimate remedy. They are irrelevant, however, to a class member's possible procedural or substantive defenses vis-a-vis the merits of plaintiffs' claim. Accordingly, any disparities among the county jails will not act to defeat class certification.

#### 4. Adequacy of Class Representation

The adequacy of class representation criterion deserves careful consideration. The sheriffs of Monroe County and Chemung County [9] are the only named defendants at this stage in the litigation. The Monroe County Sheriff strenuously dissents from his designation as class representative.[10] As a defendant in *Cooper v. Morin*, 49 N.Y.2d 69, 424 N.Y.S.2d 168, 399 N.E.2d 1188 (1979), *cert. denied*, 446 U.S. 984, 100 S.Ct. 2965, 64 L.Ed.2d 840 (1980), he is under a state court order to implement a contact visitation program for female pre-

---

**9.** *See* footnote 4.

**10.** Commentators and courts have long since recognized that named defendants in a class action rarely succumb to their roles as class representatives without protest. The justifications defendant offers to explain his inability to represent the class adequately are typical of those raised by defendants in similar positions. Although a class representative admittedly bears certain responsibilities not shared with other class members, such duties are not overburdensome. *See Johnson v. General Motors Corporation*, 598 F.2d 432, 437–38 (5th Cir.

1979); *Marcera v. Chinlund*, 595 F.2d at 1239; *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226 (9th Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975); *Redhail v. Zablocki*, 418 F.Supp. 1061 (E.D.Wisc.1976); *Research Corporation v. Pfister Associated Growers, Inc.*, 301 F.Supp. 497, 499 (N.D.Ill. 1969). *See also* Note, *Defendant Class Actions*, 91 Harv.L.Rev. 630, 643–44; Williams, J., *Some Defendants Have Class: Reflections on the GAP Securities Litigation*, 89 F.R.D. 287, 292–93 (1981).

trial detainees in the Monroe County Jail.[11] He asserts that unlike other class members he is currently in the process of establishing a program in compliance with the state court's mandate. *See* Defendants' Motion to Dismiss, filed February 17, 1981, ¶¶ 8–9, and attached affidavits. Finally, the Monroe County sheriff maintains that because he acknowledges his state law obligations, he is unable to represent adequately the positions of sheriffs who refuse to concede the applicability of state law to their own circumstances. *See* Defendant's Supplemental Affidavit, filed July 27, 1981, ¶ 9.

If Monroe County presently operated a complete contact visitation program, his argument might be more compelling. Because an operational plan is still lacking, however, defendant's argument is not persuasive. *See* Defendant's Motion to Dismiss, filed February 17, 1981, ¶ 8; Plaintiffs' Affidavit, filed June 24, 1981, ¶ 12. As plaintiffs accurately point out, the sheriff's best intentions are not an adequate substitute for a fully functioning program.[12] Moreover, because the state court order applies directly only to women pretrial detainees, there is no guarantee that men will be afforded the same program.[13] For these reasons, plaintiffs' claims against Monroe County remain alive.

Plaintiffs further contend, and I agree, that the Monroe County sheriff's "concession" concerning the applicable state law does not adversely affect his ability to represent the defendant class adequately because all New York sheriffs are sworn to uphold the state constitution. New York Constitution, Article 13, § 1; N.Y. County Law § 402; N.Y. Public Officers Law § 10. Conversely, defendant's vigorous resistance to plaintiffs' lawsuit from the time it was initiated repudiates his own argument. In fact, it is more likely the case that defendant's thorough familiarity with the factual background and legal issues in this action will enable him to represent the defendants' class more effectively than any other class member.

Under all the circumstances, I find that both the Monroe County and Chemung County sheriffs remain adequate and appropriate class representatives at this juncture of the litigation.[14] On the other hand, I believe the interests of both the court and the parties will best be served by the addition of other class representatives. Other sheriffs can be named as defendants at a later date when it becomes clearer what the status of their contact visitation programs is. In the meantime, I am satisfied that the interests of defendants' class will be amply protected by the present representatives.

### 5. *Rule 23(b) factors*

Besides the four prerequisites of Rule 23(a), one of the three criteria of Rule 23(b) must also be demonstrated. Plaintiffs request declaratory and injunctive relief to compel the class of New York sheriffs to operate contact visitation programs. Plaintiffs' allegations and requested relief fit well within the parameters of Fed.R.Civ.P. Rule 23(b)(2). A Rule 23(b)(2) class is particularly well-suited for civil rights actions where, as here, plaintiffs seek structural relief which redounds to the benefit of each class member. *Marcera v. Chinlund*, 595 F.2d at 1240; Supplementary Note of Advisory Committee Regarding Rule 23. I conclude, therefore, that certification of the requested class of defendants as a Rule 23(b)(2) class is appropriate. *See Redhail v. Zablocki*, 418 F.Supp. 1061, 1066 (E.D.Wisc.

---

**11.** Only female pre-trial detainees were included in the plaintiff class in *Cooper v. Morin*.

**12.** Applying the ancient wisdom of Homer to the present context, plaintiffs note that, "There is many a slip 'twixt the cup and the lip." Plaintiffs' Affidavit, filed June 24, 1981, ¶ 12.

**13.** Plaintiffs suggest that Monroe County be allowed to withdraw as a class representative if the county formally stipulates that men as well as women be granted contact visits. *See* Plaintiffs' Affidavit, filed June 24, 1981, ¶ 12. Presumably, no formal stipulation has yet been worked out.

**14.** This is not to say that if the relevant status of any class representative changes in the future he will be unable to withdraw as class representative upon a proper showing. Fed.R. Civ.P. Rule 23(d)(5).

1976), *aff'd*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978).

### B. *Plaintiff Class*

Defendants raise little opposition to the composition of a plaintiff class.[15] As such, I see no reason to dwell on the plaintiff class certification question. Suffice it to say I am satisfied that the putative plaintiff class meets all the requirements of Fed.R.Civ.P. Rule 23. Certification of the requested plaintiff class under Rule 23(b)(2) is granted. *See Gill v. Monroe County Department of Social Services*, 79 F.R.D. 316, 329 (W.D. N.Y.1978).

■ Although class certification in this case is justified, one more concern raised by the Monroe County sheriff's attorney should be addressed. Citing *Eisen v. Carlisle and Jacquelin*, 479 F.2d 1005, *vacated and remanded*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), he suggests that problems relating to providing adequate notice to plaintiff and defendant class members in this lawsuit may be insurmountable. It is not as clear to the court as it is to defendant's counsel that the class members cannot adequately be informed of this litigation. Nevertheless, notice to class members is not mandated in Rule 23(b)(2) class actions. Fed.R.Civ.P. Rule 23(c)(2); *Sosna v. Iowa*, 419 U.S. 393, 397 n.4, 95 S.Ct. 553, 556, n.4, 42 L.Ed.2d 532 (1975); *Marcera v. Chinlund*, 595 F.2d at 1240 n.13; *Frost v. Weinberger*, 515 F.2d 57, 65 (2d Cir. 1975) (Friendly, J.), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976). Thus, any notice problems which may arise cannot foreclose class certification in this case.

On the other hand, I am mindful that special attention ought be paid to the management of a lawsuit where defendants comprise a Rule 23(b)(2) class. Troublesome problems of fairness and, perhaps, due process may arise when absent defendants who have not been apprised of the litigation are subjected to judicial sanctions. *See* Williams, J., *Some Defendants Have Class: Reflections on the GAP Securities Litigation*, 89 F.R.D. 287, 291–93 (1981); *see also Marcera v. Chinlund*, 595 F.2d at 1240 n.13. To obviate such problems, and to ensure that defendant class members have an opportunity to be heard, I direct that each sheriff in the class be provided notice of this Order.[16] Fed.R.Civ.P. Rule 23(d)(2). Further procedures for the sheriffs' participation are outlined *infra*.

### III. PLAINTIFFS' MOTION FOR PRELIMINARY RELIEF

The final motion which will be decided in this Order is plaintiffs' motion for preliminary relief.

Plaintiffs' motion for preliminary injunctive relief is in a rather unique posture before this court. Following the Second Circuit Court of Appeals' instructions upon remand of his earlier decision, Judge Burke conducted a preliminary evidentiary hearing pursuant to Fed.R.Civ.P. Rule 65. He subsequently issued a decision which, *inter alia*, ordered the Monroe County Sheriff to ask the county legislature for funds to implement a contact visitation program. Order entered June 6, 1978. Defendants appealed this directive, while plaintiffs appealed, among other issues, the denial of a more comprehensive preliminary injunction. On appeal, the Court of Appeals vacated and remanded the district court order with specific instructions to grant the prelimi-

---

**15.** Counsel for Monroe County sheriff contends that a plaintiff class should not be certified because none of the named plaintiffs is still in jail. This argument was raised and dispensed with summarily by the Second Circuit in *Marcera v. Chinlund*, 595 F.2d at 1237 n.9; 1240 n.12. The court affirmed that under *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) and *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) a class action such as the instant one does not become moot when a proper class exists. *See Bell v. Wolfish*, 441 U.S. 520, 526 n.5, 99 S.Ct. 1861, 1867, n.5, 60 L.Ed.2d 447 (1979) (class action not mooted by transfer or release of inmate plaintiffs).

**16.** In response to my request at oral argument on July 7, 1981, counsel for plaintiffs has furnished the court with the names and addresses of the sheriffs in defendants' class. Plaintiffs' Letter, filed August 11, 1981.

nary relief requested by plaintiffs. *Marcera v. Chinlund*, 595 F.2d at 1240–42. That decision was itself vacated on grounds unrelated to either the class certification or the extent of preliminary relief issue when the Supreme Court remanded the case in light of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). *See* footnote 1, *supra.*

Technically, then, the limited preliminary relief dictated by Judge Burke remains in force. Since that order, however, plaintiffs have added their pendent state claim and the applicable federal and state laws have changed significantly. Under these circumstances, and because the scope of class certification has been redefined, it makes sense to consider plaintiffs' renewed application for preliminary relief as an entirely new motion, albeit briefly. *See* Plaintiffs' Affidavit, September 18, 1981.

■ To obtain a preliminary injunction in this circuit, a party must demonstrate:

possible irreparable injury *and* either

(1) probable success on the merits *or*

(2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting preliminary relief.

*Buffalo Courier-Express v. Buffalo Evening News*, 601 F.2d 48, 54 (2d Cir. 1979) (emphasis in original); *Caulfield v. Board of Education of the City of New York*, 583 F.2d 605, 610 (2d Cir. 1978). Plaintiffs here have more than amply met the first test for preliminary relief.

### A. *Irreparable Harm*

Defendants' failure to provide contact visits to inmates cannot adequately be compensated by money damages should plaintiffs ultimately prevail. *See Buffalo Forge Company v. Ampco-Pittsburgh Corporation*, 638 F.2d 568, 569 (2d Cir. 1981). The first days and weeks after an individual's arrest can be the most devastating. A person's anxiety while awaiting trial is no doubt great. Personal comfort and contact from relatives and friends is critically needed throughout this period perhaps more than any other. The denial of this form of personal support to someone who cannot afford to post bail cannot be measured in a dollar amount.

### B. *Likelihood of Success on the Merits*

Based on applicable state law, there is little doubt that plaintiffs will ultimately prevail on the merits of their pendent state constitutional claim. In *Cooper v. Morin*, 49 N.Y.2d 69, 424 N.Y.S.2d 168 (1979), *cert. denied*, 446 U.S. 984, 100 S.Ct. 2965, 64 L.Ed.2d 840 (1980), the highest court of New York unequivocally declared that the due process clause of the state constitution, Article I, § 6, prohibits a blanket proscription of contact visits between pre-trial detainees and their family and friends. 49 N.Y.2d at 79–82, 424 N.Y.S.2d 168. Although *Cooper v. Morin* applies directly only to female pre-trial detainees in the Monroe County Jail, *see* footnote 11 *supra*, at least one lower New York court has held that the principles articulated in that case apply equally to men and women pre-trial detainees as well as to convicted prisoners in county jails throughout the state. *McNulty v. Chinlund*, 108 Misc.2d 707, 438 N.Y.S.2d 734 (Sup.Ct., Alb. County 1981). Unless defendants can demonstrate that *Cooper v. Morin* does not govern their conduct, plaintiffs are virtually certain to succeed on their claims.[17]

For these reasons, plaintiffs are entitled to preliminary relief. The next step is to decide what form of preliminary relief is warranted.

### C. *Type of Preliminary Relief*

The Second Circuit Court of Appeals considered this question in detail. The court made it plain that even though the structural and personnel details of the various county jails were irrelevant to the liability issue, they assume importance with respect

---

17. Inasmuch as plaintiffs' claims can be disposed of on state constitutional grounds, there is no need to address the merits of their federal constitutional arguments. *Hagans v. Lavine*, 415 U.S. 528, 545–46, 94 S.Ct. 1372, 1383–84, 39 L.Ed.2d 577 (1974).

to a final remedy. *Marcera v. Chinlund*, 595 F.2d at 1241. Different facilities may require structural changes, ranging from minimal to major. Some jails may need to hire more staff to ensure adequate security. Some sheriffs may encounter exceptional hardship problems which affect their ability to comply with state law. Implementation timetables, architectural changes, and security system modifications necessarily may vary from county to county. For these reasons, while preliminary relief should not be delayed, neither should substantial relief be ordered implemented precipitately. I believe the following preliminary relief will balance these essential considerations satisfactorily.

1. The Clerk of the Court is directed to send each class defendant sheriff and his attorney a copy of this Order. *See* Appendix.

2. Any named or class defendant whose facility already allows contact visits for pretrial detainees as a general rule is directed to file and serve on plaintiffs' attorney a verified affidavit explaining the program in detail, including hours permitted, exceptions, location of visits, restrictions on visitors, etc. Any such defendant may also submit an accompanying motion to opt out of the class by virtue of his conformance with applicable state law.

3. Every other named or class defendant is directed to file and serve on plaintiffs' attorney a verified affidavit explaining in detail what the present contact visitation policy is, and what, if any, plans and timetables exist for the implementation of a contact visitation program. If the timetable of any proposed plan extends beyond a year, the reasons why it cannot be implemented sooner should be set forth in detail.

4. Named and class defendants are directed to submit their affidavits and motions on or before November 30, 1981.

5. Plaintiffs are directed to respond to the affidavits in writing on or before January 31, 1982.

6. Plaintiffs are further directed to consider the affidavits to determine what other class defendants could properly be added to the list of defendant class representatives. Plaintiffs are directed to move to include additional class representatives by January 31, 1982, if appropriate, and to serve their motion and amended complaint on the class defendants who are named by the motion.

## IV. SUMMARY JUDGMENT MOTIONS

Each party has submitted a motion for summary judgment, both of which are pending. I believe the applicable law and facts have been presented more than adequately to the court for consideration, and that the law is sufficiently clear that summary judgment may be appropriate. Nevertheless, I believe that class defendants should be given an opportunity to raise material factual questions which might require resolution by trial as well as any legal arguments not addressed by this decision, either impliedly or explicitly. Moreover, the court's decision on the class certification and preliminary injunction motions attenuates any immediate need for a decision on these motions. As such, the parties' motions for summary judgment, the only motions remaining to be resolved in this case, will not be decided at this time.

To summarize:

1. Plaintiffs' motion to amend their complaint is granted.

2. Plaintiffs' motion to certify class plaintiffs and class defendants as delineated in this Order is granted.

3. The sheriffs of Monroe County Jail and Chemung County Jail are deemed adequate class representatives, although others will be added in accordance with this Order in the near future if necessary.

4. Plaintiffs' motion for preliminary relief is granted as described in this Order.

5. The parties' motions for summary judgment will remain pending for the time being.

6. The Clerk of the Court is directed to send copies of this decision to the parties, the class defendants, and the class defendants' attorneys. *See* Appendix.

So ordered.

# APPENDIX
## TENTATIVE DEFENDANT CLASS MEMBERS

| COUNTY | COUNTY ATTORNEY | SHERIFF |
|---|---|---|
| 1) Allegany | James T. Sikaras<br>Courthouse, 32½ Schuyler St.<br>Belmont, New York 14813 | Reynard K. Meachum<br>Sheriff Dep't, 7 Court St.<br>Belmont, New York 14813 |
| 2) Cattaragus | Dennis Tobolski<br>Courthouse<br>Little Valley, New York 14755 | Charles B. Hill<br>Courthouse<br>Little Valley, New York 14755 |
| 3) Cayuga | Raymond S. Sant<br>160 Genesee Street<br>Auburn, New York 13021 | Robert C. Sponable<br>Cayuga County Jail<br>Auburn, New York 13021 |
| 4) Chemung | Louis J. Mustico<br>201–203 Lake Street<br>Elmira, New York 14901 | Carl F. Draxler<br>211 William Street<br>Elmira, New York 14901 |
| 5) Clinton | Patrick R. McGill<br>30 Clinton Street<br>Plattsburgh, New York 12901 | Russell Trombly<br>Government Center<br>Plattsburgh, New York 12901 |
| 6) Columbia | William J. Spampianto<br>12 S. Fourth Street<br>Hudson, New York 12534 | Paul J. Proper, Sr.<br>70 N. 3rd Street<br>Hudson, New York 12534 |
| 7) Cortland | Edward R. Pursar<br>County Office Building<br>Cortland, New York 13045 | Duane Whiteman<br>Courthouse<br>Cortland, New York 13045 |
| 8) Delaware | Robert H. McDowell<br>72 Main Street<br>Stamford, New York 12167 | Levon A. Felian<br>Courthouse<br>Delhi, New York 13753 |
| 9) Erie | Thaddeus J. Szymanski<br>Erie County Hall<br>Buffalo, New York 14202 | Kenneth J. Braun<br>10 Delaware Avenue<br>Buffalo, New York 14202 |
| 10) Essex | James P. Dawson<br>Court House<br>Elizabethtown, New York 12932 | Robert LaVigne<br>Court House<br>Elizabethtown, New York 12932 |
| 11) Genesee | John L. Rizzo<br>8751 W. Bergen Road<br>LeRoy, New York 14482 | W. Douglas Call<br>14 W. Main Street<br>Battavia, New York 14020 |
| 12) Greene | George J. Pulver<br>Court House<br>Catskill, New York 12414 | Joseph M. Pavlak<br>Court House<br>Catskill, New York 12414 |
| 13) Jefferson | J. T. King<br>175 Arsenal Street<br>Watertown, New York 13601 | Alfred P. O'Neill<br>311 N. Massey Street<br>Watertown, New York 13601 |
| 14) Lewis | Kenneth B. Wolfe<br>7606 State Street<br>Lowville, New York 13367 | Floyd A. Martin<br>7574 State Street<br>Lowville, New York 13367 |
| 15) Livingston | William S. Zielinski, Jr.<br>15 Clara Barton Street<br>Dansville, New York 14437 | Richard A. Kane<br>Court House<br>Geneseo, New York 14454 |
| 16) Madison | William L. Burke<br>Court House<br>Wampsville, New York 13163 | Robert L. Ryan<br>Court House<br>Wampsville, New York 13163 |
| 17) Monroe | John D. Doyle<br>307 County Office Building<br>Rochester, New York 14614 | Andrew P. Meloni<br>Hall of Justice<br>Rochester, New York 14614 |

TENTATIVE DEFENDANT CLASS MEMBERS

| COUNTY | COUNTY ATTORNEY | SHERIFF |
|---|---|---|
| 18) Montgomery | William E. Moore<br>42 Division Street<br>Amsterdam, New York 12010 | Ronald R. Emery<br>Sheriff's Office<br>Railroad Street<br>Fonda, New York 12068 |
| 19) Niagara | John V. Simon<br>County Building<br>Lockport, New York 14094 | Anthony P. Villella<br>Jail<br>Lockport, New York 14094 |
| 20) Oneida | William B. Calli<br>Oneida County Office Building<br>800 Park Avenue<br>Utica, New York 13501 | William A. Hasenauer<br>Law Enforcement Building<br>Oriskany, New York 13424 |
| 21) Orleans | Thomas J. Young<br>66 Public Square<br>Holley, New York 14470 | David Green<br>Platt Street<br>Albion, New York 14411 |
| 22) Oswego | Robert Nicholson<br>46 E. Bridge Street<br>Oswego, New York 13126 | Raymond A. Miller<br>Route 57<br>Oswego, New York 13126 |
| 23) Rensselaer | Marvin I. Honig<br>County Office Building<br>7th Avenue<br>Troy, New York 12180 | Eugene Eaton<br>1504 Fifth Avenue<br>P.O. Box 1076<br>Troy, New York 12180 |
| 24) Rockland | Marc T. Parris<br>County Office Building<br>New City, New York 10956 | Raymond A. Lindemann<br>New Hempstead Road<br>New City, New York 10956 |
| 25) St. Lawrence | Charles E. Palm<br>113 Main Street<br>Canton, New York 13617 | Keith K. Knowlton<br>Court House<br>Canton, New York 12020 |
| 26) Saratoga | Thomas D. Nolan<br>Saratoga County Municipal Center<br>Ballston Spa, New York 12020 | James D. Bowen<br>Municipal Center<br>Ballston Spa, New York 12020 |
| 27) Schoharie | Peter M. Mauhs<br>46 Main Street<br>Cobleskill, New York 12043 | Harvey E. Stoddard, Jr.<br>County Jail<br>Schoharie, New York 12157 |
| 28) Schuyler | William G. Ruger<br>110 9th Street<br>Watkins Glen, New York 14891 | Michael J. Malony<br>918 N. Franklin Street<br>Watkins Glen, New York 14891 |
| 29) Seneca | John M. Sipos<br>100 Fall Street<br>Seneca Falls, New York 13148 | Kenneth J. Greer<br>Court House<br>Waterloo, New York 13165 |
| 30) Steuben | John R. Kuhl, Jr.<br>County Office Building<br>23 E. Morris Street<br>Bath, New York 14810 | Jack Lisi<br>Steuben County Jail<br>Bath, New York 14810 |
| 31) Tioga | Walter P. Schulte<br>5 Park Avenue<br>Newark Valley, New York 13811 | J. Raymond Ayers<br>P.O. Box 160<br>Owego, New York 13827 |
| 32) Tompkins | Robert I. Williamson<br>Court House<br>Ithaca, New York 14850 | Robert T. Howard<br>Court House<br>Ithaca, New York 14850 |
| 33) Warren | Thomas M. Lawson<br>Warren County Municipal Center<br>U.S. 9<br>Lake George, New York 12845 | William T. Carboy<br>Warren County Municipal Center<br>U.S. 9<br>Lake George, New York 12845 |

TENTATIVE DEFENDANT CLASS MEMBERS

| COUNTY | COUNTY ATTORNEY | SHERIFF |
|---|---|---|
| 34) Washington | James Tomasi<br>Main Street<br>Salem, New York 12865 | Martin D. Wescott<br>Court House<br>Salem, New York 12865 |
| 35) Wayne | Samuel A. Bonafede<br>Courthouse<br>Lyons, New York 14480 | Paul Byork<br>County Jail<br>Lyons, New York 14489 |