Lisa M. AVAGLIANO, et al., Plaintiffs,

v.

SUMITOMO SHOJI AMERICA, INC., Defendant.

Palma INCHERCHERA, Plaintiff,

v.

SUMITOMO CORP. OF AMERICA, Defendant.

Nos. 77 Civ. 5641 (CHT), 82 Civ. 4930 (CHT).

United States District Court, S.D. New York.

July 10, 1985.

Reconsideration Denied Oct. 9, 1985.

Steel & Bellman, P.C., New York City, for plaintiffs Avagliano, et al. and Incherchera; Lewis M. Steel, Gina Novendstern, Richard F. Bellman, of counsel.

Epstein Becker Borsody & Green, P.C., New York City, for defendant Sumitomo Corp. of America; Ronald M. Green, and Wender Murase & White, New York City, of counsel.

## OPINION

TENNEY, District Judge.

The plaintiffs brought these actions under 42 U.S.C. § 1981 (1982) ("Section 1981"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1982) ("Title VII") alleging employment discrimination on the part of the defendant, Sumitomo Corporation of America ("Sumitomo"), formerly Sumitomo Shoji America, Inc. The plaintiffs claim that Sumitomo has a practice of hiring only male Japanese citizens to fill positions above the clerical level and that this practice results in discrimination based on sex, national origin, and race. The plaintiffs are seeking both injunctive relief and damages.[1]

The actions in *Avagliano* and *Incherchera* were consolidated for the purposes of discovery.[2] In a recent opinion, the Court granted the plaintiffs' motion for class certification and designated three nationwide classes, consisting of past and present employees of Sumitomo.[3] The Court also directed the parties to brief the issues addressed herein.

Three questions are currently before the Court: (1) Should notice be given to class members at this time? (2) What time limitations apply to the plaintiffs' Title VII claims? and (3) What statute of limitations applies to the plaintiffs' Section 1981 claims? These issues are resolved below.

## DISCUSSION

### I. *Notice*

The defendant argues that individualized notice and the right to opt out of each class should be given to all potential class members. The plaintiffs agree that notice should be given, but argue that notice concerning the pending action should be posted on bulletin boards in the workplace, and that an opt-out provision should not be included in the notice. The Court agrees with the plaintiffs.

Notice and the right to opt out are not required in this case. Notice to class members is not mandatory where—as here—the class has been certified under Federal Rule of Civil Procedure ("Rule") 23(b)(2) ("(b)(2)"). *See Frost v. Wein-*

---

1. For a more detailed history of these actions, *see* 457 U.S. 176, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982), and 103 F.R.D. 562 (S.D.N.Y.1984).

2. *See* Order filed Mar. 28, 1983, 82 Civ. 4930 (CHT), 77 Civ. 5641 (CHT).

3. *See* 103 F.R.D. 562 (S.D.N.Y.1984). Class I is the Title VII class in *Avagliano;* Class II is the Title VII class in *Incherchera*; and Class III is the Section 1981 class in *Incherchera.*

*berger,* 515 F.2d 57, 65 (2d Cir.1975), *cert. denied sub nom. Frost v. Mathews,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); *Arthur v. Starrett City Assoc.,* 98 F.R.D. 500, 508 (E.D.N.Y.1983); *see generally* Newburg on Class Actions, §§ 7992–7992d (1978 and Cum.Supp.1980 and Supp. 1984) ("Newburg"). As long as representation of the class is adequate, due process does not mandate that notice be given to individual class members. *See Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 256 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Further, there is no requirement in a (b)(2) class action that class members be given the right to opt out of the class. *See Plummer v. Chemical Bank,* 668 F.2d 654, 657 n. 2 (2d Cir.1982); *Arthur v. Starrett City,* 98 F.R.D. at 508; *Wilder v. Bernstein,* 499 F.Supp. 980, 993 n. 30 (S.D.N.Y.1980).

Nevertheless, it is within the court's discretion to direct that notice be given, where appropriate, at any stage in the action. Rule 23(d)(2); *see Vulcan Soc'y v. Fire Dep't,* 82 F.R.D. 379, 402 (S.D.N.Y.1979); *Women's Committee for Equal Employment Opportunity v. NBC, Inc.,* 71 F.R.D. 666, 671 (S.D.N.Y.1976). Although some form of notice may be appropriate in (b)(2) class actions, "experience teaches that such notice may come late in the litigation." *United States v. Allegheny-Ludlum Indus., Inc.,* 517 F.2d 826, 878 (2d Cir.1975), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

■ In order for a class to be certified under (b)(2), the defendant must have acted in a manner alleged to be hostile to the entire group, and the relief sought must be relief that is applicable to the class as a whole. *See United States v. Allegheny-Ludlum,* 517 F.2d at 878; *Wetzel v. Liberty Mutual,* 508 F.2d at 250; Practice Commentary to Rule 23(b)(2). "Courts and

commentators alike recognize that Rule 23(b)(2) was intended for use in civil rights cases, including employment discrimination litigation." Newberg, § 7992. Such actions are usually certified under (b)(2) because the plaintiff class is homogeneous, *id.,* and the conduct is challenged on a ground that is applicable to the entire class. *See* 7A C. Wright and A. Miller, Federal Practice and Procedure § 1775 (1971 and 1984 Supp.) ("Wright and Miller").

Several factors weigh against providing either individualized notice or the right to opt out. *See* 7A Wright and Miller, § 1793. First, since the (b)(2) class is a homogeneous one, fair and adequate representation by the named plaintiffs serves to ensure that the interests of all class members are protected. *See Kyriazi v. Western Electric Co.,* 647 F.2d 388, 393 (3d Cir. 1981) (quoting *Van Gemert v. Boeing Co.,* 259 F.Supp. 125, 130 (S.D.N.Y.1966) ). Second, because it is often difficult to determine the identity of every class member, requiring individualized notification and providing the right to opt out would delay the final resolution of (b)(2) class actions. *See Paddison v. Fidelity Bank,* 60 F.R.D. 695, 699–700 (E.D.Pa.1973); Advisory Rules Committee Notes on Rule 23(b)(2); "Suits brought by private employees are the cutting edge of the ... sword which Congress has fashioned to fight ... discrimination in employment.... The imposition of notice and the ensuing costs often discourage such suits." *Wetzel v. Liberty Mutual,* 508 F.2d at 254; *accord,* Newberg, § 7992b (Requiring notice in "(b)(2) employment class actions would have the undesirable effect of inhibiting meritorious class litigation in the public interest.").

In the instant action, the class has been certified as a (b)(2) class, and therefore, notice and the right to opt out are not mandatory.[4] The group is a homogeneous

---

4. The defendant argues that the class should be recertified as a Rule 23(b)(3) ("(b)(3)") class. The defendant offers no valid support for this argument, and the argument has no merit. Even if the class were recertified, however, notice and the right to opt out would not be mandatory. "[W]hen class actions are maintainable under both 23(b)(2) and 23(b)(3), ... the general policy is that these suits should be treated as (b)(2) class actions and mandatory notice avoided." Newburg, § 7992a; *see Kyriazi v. Western Electric Co.,* 647 F.2d 388, 393–95 (3d

one—made up of past and present female employees alleging discrimination by the defendant—and the class is adequately represented. See 103 F.R.D. 562 at 583 (1984). Therefore, the Court finds that there is no need for individualized notice with the right to opt out at this point in the litigation. Accordingly, the defendant's request for such notice is denied.[5]

■ Nevertheless, the defendant's argument that "notice would serve a number of very valuable purposes" is persuasive.[6] The plaintiffs suggest, and the Court agrees, that a general notice—without an opt out-provision—describing the pending action should be posted on bulletin boards at the defendant's offices.

Although this type of notice may not reach all potential plaintiffs, particularly those who are no longer employed by the defendant, such notice is sufficient at this stage of the litigation. It will serve to apprise many of the potential class members of the issues involved in the litigation. See Marcera v. Chinlund, 91 F.R.D. 579, 585 (W.D.N.Y.1981). In addition, the defendant has expressed concern that the only information some employees have obtained about this case has been obtained through rumor or gossip.[7] Posting notices will end unfounded speculation concerning

the nature of the action. The notice will also facilitate the discovery process since individuals will be able to contact class counsel to determine whether they qualify as members of the class.

The defendant is directed to post a notice for 90 days on the public bulletin boards in all Sumitomo offices, and on all bulletin boards where legal notices or workers' notices are ordinarily posted. The content of the notice should conform to the specifications set out in the margin.[8] The defendant is ordered to provide the labor required to post the notices, and the plaintiffs are ordered to pay the cost of producing the notices.

## II.  Title VII Time Limitations

In certifying the various classes in this action, the Court held that the Title VII class in Avagliano "will consist of all past and present female employees of Sumitomo whose employment did not terminate more than 300 days prior to the first [date of filing a complaint with the Equal Employment Opportunity Commission ("EEOC")]. The Title VII class in Incherchera will consist of all past and present female employees of Sumitomo whose employment did not terminate more than 300 days prior

Cir.1981); *Wetzel v. Liberty Mutual,* 508 F.2d at 252–53.

5.  The defendant argues that "Incherchera's Title VII and section 1981 claims may be hopelessly in conflict with those of various absent class members." Defendant's Memorandum of Law, at 50 n. 27. The defendant, however, has misconstrued Incherchera's claims concerning race and national origin. Incherchera is asserting claims only on behalf of past and present female employees "who are not of Japanese national origin or Japanese racial background." Plaintiff's Verified Complaint, at 3. Incherchera seeks relief from the defendant's alleged discrimination based on common characteristics—race and national origin—which Incherchera shares with the class. Because the class is cohesive in this respect, the defendant's argument fails.

It should be noted, however, that under § 1981, Incherchera cannot assert claims concerning discrimination based on sex. Section 1981 does not embrace sex discrimination claims. *See Payne v. Travenol Labs., Inc.,* 673

F.2d 798, 815 (5th Cir.), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982); *Bobo v. ITT, Cont'l Baking Co.,* 662 F.2d 340, 342 (5th Cir.1981), *cert. denied,* 456 U.S. 933, 102 S.Ct. 1985, 72 L.Ed.2d 451 (1982).

6.  Defendant's Memorandum of Law, at 46. By contrast, the defendant's argument that notice should not be given unless an opt-out provision is included is not persuasive.

7.  *Id.*

8.  The notice should consist of the language proposed by the plaintiffs, supplemented by the following. An additional paragraph should be included, giving the names of the attorneys representing the defendant or the name of someone who can be contacted if an individual wishes to communicate with the defendant concerning this litigation. Furthermore, the notice must state that class members may respond to the notice, but are not required to do so. The notice should make it clear that class members will not be excluded for failing to respond.

to the date of filing." 103 F.R.D. at 578.[9] The question currently before the Court is a discreet one, namely, what dates constitute the first filing dates for the Title VII classes in the case at bar.

### A. *Avagliano*

■ Both parties agree that in *Avagliano* Joanne Schneider ("Schneider") was the first plaintiff to file a complaint with the EEOC, and that her complaint was filed on October 19, 1976.[10] Thus, the Title VII class in *Avagliano*—Class I—includes all women employed by the defendant on or after December 24, 1975.

The defendant argues, however, that the October 19, 1976 filing date should apply only to the claim of sex discrimination and not to the claim of national origin discrimination. The defendant contends that a separate filing date must be applied to the national origin discrimination claim because the complaint that Schneider filed with the EEOC alleged only sex discrimination, and did not allege discrimination based on national origin.

The plaintiffs argue that Schneider's EEOC complaint was subsequently amended to include a claim of national origin discrimination and that the amendment relates back to the original complaint. Therefore, the plaintiffs contend that October 19, 1976 constitutes the filing date for both claims. The Court agrees with the plaintiffs.

The Second Circuit has embraced a flexible approach in interpreting Title VII complaints filed with the EEOC. *See Silver v. Mohasco Corp.*, 602 F.2d 1083, 1090 (2d Cir.1979), *rev'd on other grounds*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed. 532 (1980); *Egelston v. State Univ. College*, 535 F.2d

752, 755 (2d Cir.1976). *See also Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 964–65 (3d Cir.1978); *Jenkins v. Blue Cross Mutual Hospital Ins., Inc.*, 538 F.2d 164, 168 (7th Cir.), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976). A complaint filed with the EEOC may be amended to "amplify allegations made therein [and to allege] additional acts which constitute unlawful practices related to or growing out of the source of the original charge." 29 C.F.R. § 1601.12 (1984). Such amendments will relate back to the date the original complaint was filed with the EEOC. *Id. See also Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 399 (3d Cir.1976) ("[A]dditional charges filed during the pendency of the administrative proceedings may fairly be considered explanations of the original charge and growing out of it.").

In the case at bar, the EEOC was notified that the charges against the defendant included a national origin discrimination claim, and the EEOC had an opportunity to examine that allegation. Less than six months after Schneider filed her complaint, the EEOC received seven complaints from other Sumitomo employees, alleging sex discrimination *and* national origin discrimination on the part of the defendant. These complaints were filed while the EEOC investigation was still pending. Further, when these complaints were filed, the plaintiffs' attorney sent a letter to the EEOC stating that these seven cases were companion cases to Schneider's case, and that the charges pertained to the same employer.

■ Where the EEOC investigates a matter, considerable weight should be afforded to the construction that the EEOC

---

**9.** For a discussion of the law underlying the applicable limitations period in Title VII actions see 103 F.R.D. 577–78; *see also* 42 U.S.C. § 2000e–5(c), (e) (1982).

**10.** Schneider originally filed her complaint with the EEOC on October 8, 1976, and it was deferred to a state agency. The agency referred it back to the EEOC on October 19, 1976, which constitutes the filing date. In *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d

532 (1980), the Supreme Court held that in a deferral state such as New York, a complaint is deemed to be filed with the EEOC when (1) the state agency refers the complaint back to the EEOC, *or*

(2) a period of sixty days has passed from the time the complaint was originally received by the EEOC. The filing date is based on the shorter of the two periods.

gives to the complaint filed. *See Macklin v. Spector Freight Systems, Inc.*, 478 F.2d 979, 988 (D.C.Cir.1973); *accord Silver v. Mohasco*, 602 F.2d at 1090 ("We look not merely to the four corners of the [complaint], but take into account the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" (quoting *Smith v. American Pres. Lines, Ltd.*, 571 F.2d 102, 107 n. 10 (2d Cir.1978)). In this instance, the EEOC consolidated the subsequent complaints filed against Sumitomo with Schneider's complaint. Thus, the EEOC's investigation encompassed not only Schneider's original charge concerning sex discrimination, but also the charge concerning national origin discrimination. Because the claim of national origin discrimination was in fact considered by the EEOC, it is appropriate to treat it as part of the original complaint filed with the EEOC. *See Obradovich v. Federal Reserve Bank*, 569 F.Supp. 785, 789 (S.D.N.Y.1983); *Kahn v. Pepsi Cola Bottling Group*, 526 F.Supp. 1268, 1270 (E.D.N.Y.1981); *Latino v. Rainbo Bakers, Inc.*, 358 F.Supp. 870, 872 (D.Col.1973).

The Court concludes that Schneider's complaint was amended. This conclusion is based on (1) the complaints subsequently filed with the EEOC; (2) the attorney's letter to the EEOC, and (3) the EEOC's consolidation of the actions. Because the amendment relates back to the original complaint, October 19, 1976 constitutes the filing date for the entire class in *Avagliano*.

### B. *Incherchera*

■ Incherchera's complaint was filed with the EEOC on February 12, 1982.[11] Accordingly, the Title VII class in *In-*

*cherchera*—Class II—includes women employed by the defendant 300 days prior to that date.

The defendant again argues that the plaintiffs' claims must be limited to those charges actually specified in the complaint filed with the EEOC—in this instance, national origin and sex discrimination—and that the plaintiffs therefore cannot assert a claim of race discrimination. The Court rejects this argument.

As previously discussed, jurisdiction may be asserted over all claims which can reasonably be expected to evolve out of the specified charge of discrimination. *See Silver v. Mohasco*, 602 F.2d at 1090; *Hicks v. ABT*, 572 F.2d at 966; *Ostapowicz v. Johnson*, 541 F.2d at 399. In the instant case, the allegation of national origin discrimination could reasonably be expected to lead to a claim of racial discrimination. *See Kahn v. Pepsi*, 526 F.Supp. at 1270 ("[The] allegation in the complaint of race discrimination can be viewed as merely a refinement of the charge of national origin discrimination."); *Dickson v. Mortgage & Trust, Inc.*, 14 F.E.P. 334, 338 (S.D.Tex.1975) (Race and national origin discrimination "are identical in kind.").

Essentially, Incherchera's allegation of race discrimination does no more than clarify the previous allegations of unlawful employment practices. The race discrimination claim pertains to the policy and practice of the defendant identified in the original complaint.

The defendant cannot claim to be unfairly surprised by the allegation of race discrimination since that allegation is of the same type and character as the charge originally made in the EEOC proceeding. *See Din v. Long Island Lighting*, 463

---

11. It is undisputed that Incherchera's complaint was originally received by the EEOC on January 5, 1982. The record shows that on February 8, 1982 the EEOC deferred to the state agency, and on February 9, 1982 the agency referred the complaint back to the EEOC. The complaint was officially received by the EEOC on February 12, 1982.

It appears that the defendant was not aware that the complaint was referred back to the

EEOC, and consequently the defendant states that the date of filing was March 17, 1982—sixty days after the complaint was first received by the EEOC. Since the complaint was referred back to the EEOC before the sixty day period ended, the date of filing is the earlier date—February 12, 1982. *See Mohasco v. Silver*, 447 U.S. at 820, 100 S.Ct. at 2494; *see also supra* note 10.

F.Supp. 654, 660 (E.D.N.Y.1979); *accord* 6 Wright & Miller, § 1501 (Supp.1984) ("[A]s long as the original complaint provides defendant with adequate notice of the conduct ... upon which plaintiff bases his claim ... it is reasonable to assume that defendant has knowledge of any claim plaintiff might assert ... arising out of the event in dispute."). Thus, expanding the scope of the litigation to include a claim of race discrimination does not prejudice the defendant, since the defendant had the opportunity to prepare a defense with respect to the challenged conduct. *See Din v. Long Island Lighting,* 463 F.Supp. at 660; *Obradovich,* 569 F.Supp. at 789.

For the reasons set forth above, the Court concludes that a claim of race discrimination may be asserted by the Title VII class in *Incherchera,* and that February 12, 1982 constitutes the filing date for that class.

III. *Section 1981: Time Limitations*

■ The final issue to be resolved is the determination of what statute of limitations should apply to the Section 1981 class in *Incherchera.*[12] Congress has not specified a limitations period for Section 1981. The court must therefore refer to the law of the forum state—in this case New York's law—to determine the applicable statute of limitations. *See* 42 U.S.C. § 1988 (1982); *Stafford v. International Harvester Co.,* 668 F.2d 142, 151 (2d Cir. 1981); *Arneil v. Ramsey,* 550 F.2d 774, 779–80 (2d Cir.1977).

■ The limitations period for a federal civil rights action is three years under New York law. *See Pauk v. Board of Trustees of CUNY,* 654 F.2d 856, 861 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); N.Y.Civ.Prac.Law and Rules ("CPLR") § 214(2) (McKinney 1972). Where, as here, some plaintiffs are not residents of New York, the New York borrowing statute must also be considered in determining the applicable statute of

12. *See supra* note 5 for a discussion of this class.

limitations to be applied. *See* CPLR § 202. The borrowing statute provides:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

The purpose of the borrowing statute is to protect resident defendants, and to discourage forum shopping. *See Stafford,* 668 F.2d at 151. The statute prevents plaintiffs from bringing an action in New York that would be time-barred in those states where the plaintiffs could otherwise have brought suit. *See Sack v. Low,* 478 F.2d 360, 365 (2d Cir.1973).

Two methods have developed for determining where a cause of action accrued for the purposes of the borrowing statute: (1) the traditional place-of-injury approach, and (2) the modern conflicts-of-law approach. The New York Court of Appeals has not yet definitively addressed the question of which approach it would adopt in determining where a cause of action accrued for the purposes of the borrowing statute.

Under the first method, the cause of action accrues where the injury physically takes place. If the injury is an economic one, then the place of injury is the place where the economic impact is felt. *See Arneil,* 550 F.2d at 779; *Sack,* 478 F.2d at 366; *Bache Halsey Stuart, Inc. v. Namm,* 446 F.Supp. 692, 696–97 (S.D.N.Y.1978). Under the conflicts-of-law, or center-of-gravity, approach, the "contacts" and "interests" of the various states involved are considered and weighed. The law of the state that has the greatest interest in the issue is applied. *See State Teachers Retirement Bd. v. Fluor Corp.,* 500 F.Supp. 278, 288 (S.D.N.Y.1980), *rev'd on other grounds,* 654 F.2d 843 (2d Cir.1981); *Haberman v. Tobin,* 466 F.Supp. 447, 449–50 (S.D.N.Y.1979); *Natural Resources Corp.*

v. *Royal Resources Corp.*, 427 F.Supp. 880, 883-84 (S.D.N.Y.1977).

In the case at bar, the plaintiffs contend that the modern conflicts approach should be applied. The plaintiffs argue that under this analysis, the court would find that the cause of action had accrued in New York since the plaintiffs' claims arise out of a centralized policy emanating from New York.

The Court agrees that the conflicts approach is the better one, since it provides a logical, rather than a mechanical, method for determining where the action accrued. *See Haberman*, 466 F.Supp. at 450; *Natural Resources*, 427 F.Supp. at 883-84. The conflicts approach is particularly attractive since it could result in a single limitations period being applied to the entire class, which would facilitate the litigation.[13]

The Second Circuit, however, has indicated that absent a definitive ruling by the New York Court of Appeals, it is "most appropriate for a federal court ... to take a conservative position and apply the traditional place of injury test." *Stafford*, 668 F.2d at 149. *Accord Lang v. Paine, Webber, Jackson & Curtis, Inc.*, 582 F.Supp. 1421, 1425 (S.D.N.Y.1984) ("Although some lower courts ... have hypothesized that New York's highest court would apply the 'modern' conflict of laws analysis to the borrowing statute, the Second Circuit ... has consistently held that it would not." (citations omitted)); *Maiden v. Biehl*, 582 F.Supp. 1209, 1213 (S.D.N.Y.1984) ("[T]he Second Circuit has made it clear that choice of law principles based on grouping of contacts do not apply to borrowing statute analysis." (citations omitted)); *Freschi v. Grand Coal Venture*, 551 F.Supp. 1220, 1225 (S.D.N.Y.1982) ("I consider myself required to apply the traditional 'place of injury' test to determine where the cause of action accrued.").

Accordingly, the place-of-injury test will be applied in the case at bar. As previous-ly indicated, if the injury claimed is an economic one, under this test, the cause of action accrues where the economic impact of the defendant's conduct is felt. *See Industrial Consultants, Inc. v. H.S. Equities, Inc.*, 646 F.2d 746, 747 (2d Cir.), *cert. denied*, 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981). In this case, the injury alleged by the plaintiffs is economic. The cause of action accrued, therefore, in the state where the individual plaintiff was employed by the defendant, since that is where the impact of the defendant's alleged discrimination was felt.

In sum, the limitation periods applicable to the Section 1981 class in *Incherchera* is dictated by New York law. For plaintiffs who are New York residents, the statute of limitations is three years. For plaintiffs who are nonresidents, the statute of limitations is governed by the borrowing statute and the place-of-injury test. Therefore, the statute of limitations for non-residents is either the three year limitations period of New York, or the limitations period of the accrual state, whichever is shorter.

## CONCLUSION

For the reasons set forth above, individualized notice with the right to opt out is not required. Instead, notices conforming to the Court's instructions are to be posted on public bulletin boards in the defendant's offices.

The filing date for the entire Title VII class in *Avagliano* is October 19, 1976. The filing date for the *Incherchera* Title VII class is February 12, 1982. These classes include past and present female employees of Sumitomo whose employment did not terminate more than 300 days prior to the respective filing dates.

In terms of the *Incherchera* Section 1981 class, the applicable limitations period is to be determined according to New York law. New York's three year statute of limitations will be applied to class members

---

**13.** *See In Re "Agent Orange" Product Liability Litigation*, 597 F.Supp. 740, 803 (E.D.N.Y.1984) (citing *Burnet v. Grattan*, ⸺ U.S. ⸺, 104 S.Ct. 2924, 2930, 82 L.Ed.2d 36 (1984)) (The court noted that applying the statute of limitations of each plaintiff's residence would make it almost impossible to administer the litigation).

working in New York. In the case of class members working outside of New York, either New York's statute of limitations or the statute of limitations of the accrual state—the state of employment—will be applied, whichever is shorter.

So ordered. .